GEBHARDT v O'ROURKE

Docket No. 94731. Argued October 6, 1993 (Calendar No. 8). Decided January 25, 1994.

Barbara K. Gebhardt brought a legal malpractice action in the Genesee Circuit Court against Jerome O'Rourke and O'Rourke, Goldstein, Joseph and Kelly, P.C., for failure to provide a substantial defense in an underlying criminal case. Although the plaintiff had been convicted by a jury in that case, following a motion for a new trial, she was acquitted by the court without retrial on the basis of insufficient evidence. The court, Earl Borradaile, J., granted summary disposition for the malpractice defendants on the ground that the complaint was barred because it was brought more than two years after the defendants last represented the plaintiff, MCL 600.5805(4); MSA 27A.5805(4), and more than six months after she should have discovered her claim, MCL 600.5838; MSA 27A.5838. The Court of Appeals, WEAVER, P.J., and WAHLS and TAYLOR, JJ., reversed, holding that the complaint was timely filed because the cause of action did not accrue until the judgment of acquittal in the underlying criminal case became final (Docket No. 126279). The defendants appeal.

In an opinion by Justice MALLETT, joined by Chief Justice CAVANAGH and Justices LEVIN, BRICKLEY, BOYLE, and RILEY, the Supreme Court held:

A criminal defendant's cause of action for legal malpractice accrues on the last day of the attorney's professional service in the underlying criminal matter out of which the negligence arose. Thereafter, the plaintiff has two years to file suit. However, such an action will not be barred by the two-year provision if it is filed within six months of when the plaintiff discovers, or should have discovered, the malpractice claim. Successful postconviction relief is not a prerequisite to the maintenance of a claim of legal malpractice arising out of negligent representation in a criminal matter.

1. MCL 600.5805(4); MSA 27A.5805(4) provides that a mal-

REFERENCES

Am Jur 2d, Attorneys at Law § 221.

When statute of limitations begins to run upon action against attorney for malpractice. 32 ALR4th 260.

practice action must be brought within two years of the accrual of the claim. MCL 600.5838; MSA 27A.5838 specifies that accrual occurs on the last day of professional service, regardless of when the plaintiff discovers or otherwise has knowledge of the claim, but permits additional time to bring an action in providing that a plaintiff can file within six months of when a claim is discovered or should have been discovered. Because the claim in this case was filed more than two years after the attorney's last day of professional service, the suit is barred under the two-year limitation period. The action also is barred under the six-month discovery rule because the plaintiff knew that she had a possible cause against her attorney at the time she moved for a new trial.

2. The Legislature intended that an attorney's last day of providing professional service be the sole basis for determination of the accrual of a cause of action for legal malpractice. Lack of ripeness is irrelevant with regard to the two-year period of limitation. Nor is the statute of limitations tolled by an appeal of the underlying matter.

3. Issue preclusion and collateral estoppel should be used in appropriate cases; however, their availability should not lead to a subversion of the statute of limitations by allowing a criminal defendant first to obtain postconviction relief before the limitation period begins to run. Rather, a two-track approach should be adopted, recognizing that a criminal defendant who has initiated postconviction relief proceedings should have knowledge sufficient to have discovered a claim against a defense attorney for statute of limitation purposes, and thus must file a malpractice complaint within six months of discovering the existence of the claim or within two years of the attorney's last day of service in the matter in which the alleged negligence occurred. With the claim preserved, the plaintiff can and should seek a stay in the civil suit until the criminal case is resolved.

4. The syllabus accompanying the opinion of the Court of Appeals is to be amended to reflect that the plaintiff was acquitted without retrial and that the trial court made no finding of ineffective assistance of counsel during the plaintiff's criminal trial.

Justice GRIFFIN concurred except with respect to part III of Justice MALLETT's opinion.

Reversed.

195 Mich App 506; 491 NW2d 249 (1992) reversed.

LIMITATION OF ACTIONS — LEGAL MALPRACTICE — CRIMINAL DEFENDANTS — CAUSES OF ACTION — ACCRUAL.

A criminal defendant's cause of action for legal malpractice accrues on the last day of the attorney's professional service in

the underlying criminal matter out of which the negligence arose; thereafter, the plaintiff has two years to file suit; however, such an action will not be barred by the two-year provision if it is filed within six months of when the plaintiff discovers, or should have discovered, the malpractice claim; successful postconviction relief is not a prerequisite to the maintenance of a claim of legal malpractice arising out of negligent representation in a criminal matter (MCL 600.5805, 600.5838; MSA 27A.5805, 27A.5838).

*Pitt, Dowty & McGehee, P.C.* (by *Michael L. Pitt* and *Peggy Goldberg Pitt*), for the plaintiff.

*Smith & Brooker, P.C.* (by *Thomas A. Connolly*), for the defendants.

MALLETT, J. In this interlocutory appeal, we consider whether plaintiff Barbara Gebhardt's attorney malpractice suit is barred by the statute of limitations. The trial judge granted defendant attorney Jerome O'Rourke's motion for summary disposition on the ground that the plaintiff had not filed her malpractice complaint within two years of the attorney's last day of professional service or within six months after discovering the existence of her claim. The Court of Appeals reversed, holding that the complaint was timely filed because the cause of action did not accrue until the judgment of acquittal in the underlying criminal case was upheld on appeal. We reverse.

I

In 1986, the plaintiff was charged with aiding and abetting her then-fiancé, Gary Gebhardt, in the alleged rape of his ten-year-old daughter. The plaintiff retained defendant Jerome O'Rourke and his law firm to defend her.

Genesee Circuit Court Judge Philip C. Elliott presided at the Gebhardts' trial. The jury trial concluded on January 8, 1987, resulting in convictions of both Barbara and Gary Gebhardt. The

plaintiff was sentenced to serve a prison term of thirteen months to five years.[1]

After her conviction, Ms. Gebhardt dismissed Mr. O'Rourke and hired attorney Kenneth M. Mogill to represent her in postconviction proceedings. On January 27, 1987, Mr. Mogill filed an appearance. Both attorneys were present at the February 3, 1987, sentencing hearing. This was Mr. O'Rourke's last appearance on behalf of the plaintiff. On March 27, 1987, Mr. Mogill filed a motion for new trial. The motion alleged that attorney O'Rourke failed to move for psychiatric examination of the complainant, failed to offer expert testimony on the subject of children's claims of sexual abuse, and failed generally to provide a substantial defense.

Judge Elliott issued a written opinion on the motion for new trial in which he set aside the jury's conviction of Ms. Gebhardt, stating that there was insufficient evidence that she was an aider or abetter of the crime, even assuming the child's testimony to be true. On July 11, 1988, he entered a judgment of acquittal.[2]

Following the entry of Judge Elliott's opinion, the prosecutor filed a complaint for superintending control in the Court of Appeals. After that request was denied, the prosecutor filed an application for leave to appeal to the Michigan Supreme Court. That application was denied on April 19, 1989, thus making the order of acquittal final as of that date. 432 Mich 894.

On November 3, 1989, the plaintiff initiated this malpractice suit against attorney O'Rourke and his law firm.

---

[1] Gary Gebhardt was sentenced to serve three to fifteen years in prison for first-degree criminal sexual conduct.

[2] Gary Gebhardt was granted a new trial. Judge Elliott indicated that because he believed that the child's testimony was untrue, an injustice had been done.

Mr. O'Rourke and his firm moved for summary disposition, claiming that plaintiff's action was barred by the applicable statute of limitations, MCL 600.5805; MSA 27A.5805 and MCL 600.5838; MSA 27A.5838. The statute requires a plaintiff in a legal malpractice action to file suit within two years of the attorney's last day of service, or within six months of when the plaintiff discovered, or should have discovered the claim.

The motion for summary disposition was granted. The trial court reasoned that at the time the plaintiff was convicted and sentenced, she already had fired her attorney, knew he had made errors, and had notice sufficient to start the running of either the two-year statute of limitations or the six-month discovery provision.

The Court of Appeals reversed, holding that the plaintiff's cause of action did not accrue until April 19, 1989, when the judgment of acquittal became final. 195 Mich App 506, 508; 491 NW2d 249 (1992). When the Court of Appeals opinion was prepared for publication, the reporter of decisions issued an erroneous summary of the facts in the syllabus. The syllabus stated that the plaintiff "successfully moved for a new trial on the basis of, among other things, ineffective assistance of counsel, and was acquitted following retrial." *Id.* at 506. Actually a judgment of acquittal was entered by the trial judge without retrial.[3] Rather than

[3] The reporter's mistake was likely due to ambiguity and inaccuracy in the Court of Appeals opinion that arguably mischaracterized the trial court's ruling on the motion for new trial and the judgment of acquittal. The opinion states, "on March 24, 1987, plaintiff's new counsel filed a motion for new trial. One argument was that a new trial should be granted because of the poor representation given by defendants. On June 13, 1988, the trial court granted plaintiff's motion for a new trial. A judgment of acquittal was entered on July 11, 1988 . . . ." *Id.* at 507. Although not outright erroneous, the opinion is misleading because it suggests that ineffective assistance was a ground for plaintiff's acquittal and that plaintiff's motion for

basing the acquittal on ineffective assistance of counsel, the judge specifically stated that his judgment was on the basis of insufficiency of evidence.

Defendant O'Rourke and his firm appeal in this Court, seeking reinstatement of the trial court's dismissal of the action and correction of the erroneously prepared syllabus of the Court of Appeals opinion.

## II

The applicable statute of limitations is MCL 600.5805(4), 600.5838; MSA 27A.5805(4), 27A.5838.[4]

new trial was granted. While the motion was granted for Gary Gebhardt, Barbara Gebhardt was acquitted without retrial on the ground of insufficiency of evidence. Given the wording of the opinion, it is not surprising that the reporter was misled into writing the inaccurate summary.

[4] A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, *after the claim first accrued* to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

\* \* \*

Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice. [MCL 600.5805(4); MSA 27A.5805(4). Emphasis added.]

(1) Except as otherwise provided in section 5838a, a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession *accrues at the time that person discontinues serving the plaintiff* in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, *regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.*

(2) Except as otherwise provided in section 5838a, an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, *or within 6 months after the plaintiff discovers or should have discovered the existence of the claim,* whichever is later. The burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A malpractice action which is not commenced within the time

Section 5805 is the general limitation provision, delineating periods for different types of actions. It states that a plaintiff must bring a malpractice action within two years of when the claim first accrues, or it will be time-barred. Section 5838 is specific to malpractice actions. The first subsection provides that accrual occurs on the last day of professional service, regardless of when the plaintiff discovers or otherwise has knowledge of the claim. The second subsection allows additional time to file by providing that a plaintiff can file within six months of when he discovered, or should have discovered his claim.

The defendants argue that the straightforward language of §§ 5805 and 5838 precisely defines accrual, and the time limitations for filing a malpractice claim. The claim accrued when Mr. O'Rourke last provided professional service for Ms. Gebhardt in the underlying criminal matter. This occurred, at the latest, at the February 3, 1987, sentencing hearing, when the defendant appeared on her behalf.[5] The November 3, 1989, filing of this malpractice suit occurred well beyond the two-year limitation period. Further, Ms. Gebhardt should have discovered her malpractice claim no later than March 27, 1987, when her new attorney moved for retrial. Therefore, defendants claim that the plaintiff's action is barred under both the two-year accrual and the six-month discovery provisions. We agree.

The statute is unambiguous. This Court has stated that where the language used is clear, then the Legislature must have intended the meaning it

prescribed by this subsection is barred. [MCL 600.5838; MSA 27A.5838. Emphasis added.]

[5] The record shows that although Mr. O'Rourke appeared at the sentencing hearing, he did not speak on behalf of Ms. Gebhardt, instead deferring to retained appellate counsel, Mr. Mogill.

has plainly expressed, and the statute must be enforced as written. *Hiltz v Phil's Quality Market,* 417 Mich 335; 337 NW2d 237 (1983). Unfortunately, courts have been inconsistent in applying the plain language of the statute.

Previous case law has confused the application of the statute by inserting traditional tort concepts of "accrual" into the clear statutory scheme.[6] The normal rule in tort law is that a cause of action does not accrue until all elements of the tort exist. Section 5838 expressly rejects this rule by providing that accrual occurs without regard to whether the client's malpractice claim is ripe.

Cases that have analyzed accrual in terms of whether all the elements of a plaintiff's cause of action exist do not explain why a different definition of accrual is being applied than that set forth in § 5838. Perhaps the confusion arises because § 5805 speaks of accrual without limiting its ordinary meaning, whereas § 5838 defines accrual as occurring on the last day of professional service without regard to when the plaintiff discovers the claim. Thus, cases that analyze accrual pursuant to tort law definitions may assume that an ambiguity exists regarding the meaning of "accrual" under the two sections.

Even assuming such ambiguity exists, rules of statutory construction require that separate provisions of a statute, where possible, should be read as being a consistent whole, with effect given to each provision. *Malonny v Mahar,* 1 Mich 26 (1847); *R & T Sheet Metal, Inc v Hospitality Motor Inns, Inc,* 139 Mich App 249; 361 NW2d 785 (1984). Also, where a statute contains a general provision and a specific provision, the specific provision con-

[6] See Tallerico & Raphelson, *Professional liability of attorneys,* 36 Wayne L R 815, 849-855 (1990).

trols. *In re Landaal,* 273 Mich 248; 262 NW 897
(1935); *Wayne Co Prosecutor v Wayne Circuit
Judge,* 154 Mich App 216; 397 NW2d 274 (1986).
Here, § 5805 speaks of accrual in general terms,
while § 5838 defines accrual in specific terms.
Therefore, following rules of construction, the spe-
cific definition of accrual as set forth in § 5838 is
interpreted to be consistent with § 5805 and is
controlling. Accrual of a malpractice action, for
purposes of the two-year limitation period, occurs
on the last day of professional service.

Interpretations of the statute that suggest that a
plaintiff has two years to file suit after discovering
the claim render the six-month discovery provision
of § 5838 superfluous.[7] The section clearly provides
that a client has only six months from the date a
claim is discovered in which to sue. The two-year
interpretation of accrual is counter to rules of
construction requiring effect to be given to each
provision.

Furthermore, when ambiguity exists, courts are
to give effect to the intent of the Legislature. *Ford
Motor Co v Village of Wayne,* 358 Mich 653; 101
NW2d 320 (1960); *Kubick v Child & Family Ser-
vices of Michigan,* 171 Mich App 304; 429 NW2d
881 (1988). Clearly, the Legislature voiced its in-
tent when it amended § 5838 in 1975, adding the
words "regardless of the time the plaintiff discov-
ers or otherwise has knowledge of the claim" to
the end of the first part of the section. The Legisla-
ture intended that the last day of service be the
sole basis for determination of accrual. Lack of
ripeness, i.e., that not all the elements of the tort
have been discovered, is irrelevant to the two-year

[7] See, e.g., *Dowker v Peacock,* 152 Mich App 669; 394 NW2d 65
(1986), and *Luick v Rademacher,* 129 Mich App 303; 342 NW2d 617
(1983).

limitation period.[8] We will follow the statutory
scheme as clearly written and intended by the
Legislature. A client has up to two years from the
time his attorney stops representing him regard-
ing the matter in question to bring a malpractice
suit.

Because the plaintiff filed her claim well past
two years from Mr. O'Rourke's last day of service,
the suit is barred under the two-year limitation
provision.

The plaintiff's action is also barred under the
six-month discovery rule. Recently, in *Moll v Ab-
bott Laboratories,* 444 Mich 1; 490 NW2d 305
(1993), we stated that the standard under the
discovery rule is not that the plaintiff knows of a
"likely" cause of action. Instead, a plaintiff need
only discover that he has a "possible" cause of
action.

Ms. Gebhardt knew that she had a possible
claim against Mr. O'Rourke when she moved for a
new trial. At this time, she was able to allege the
elements of a malpractice claim. These elements
are: (1) the existence of an attorney-client relation-
ship, (2) the acts constituting the negligence, (3)
that the negligence was the proximate cause of the
injury, and (4) the fact and extent of the injury
alleged. *Basic Food Industries, Inc v Grant,* 107
Mich App 685, 690; 310 NW2d 26 (1981); *Coleman
v Gurwin,* 443 Mich 59, 63; 503 NW2d 435 (1993).

Plaintiff was clearly able to allege the first two
elements at the time of her motion for new trial.
There is no doubt that an attorney-client relation-
ship existed because Mr. O'Rourke was the attor-

---

[8] This Court's opinion in *Biberstine v Woodworth,* 406 Mich 275;
278 NW2d 41 (1979), did not apply the 1975 amendment of § 5838,
which clarified that accrual occurs on the last date of service "regard-
less of the time the plaintiff discovers or otherwise has knowledge of
the claim," and therefore that decision is distinguishable from the
present case.

ney of record at Ms. Gebhardt's trial. Concerning the second element, acts constituting negligence were alleged in Ms. Gebhardt's motion for new trial. Specifically, plaintiff alleged that she was denied effective assistance of counsel by Mr. O'Rourke's failure to move for an independent psychiatric examination of the complainant or to present expert testimony regarding the children's false accusations of sexual abuse. These acts allegedly deprived Ms. Gebhardt of a substantial defense at trial.

The last two elements are generally more problematic to analyze under the discovery rule. One could argue that damages and causation were uncertain until the plaintiff obtained a final judgment of acquittal.[9] However, harm is established not by the finality of the damages, but by the occurrence of identifiable and appreciable loss. *Luick v Rademacher,* 129 Mich App 803; 342 NW2d 617 (1983); *Hayden v Green,* 431 Mich 878; 429 NW2d 604 (1988). Once an injury and its possible cause is known, the plaintiff is aware of a possible cause of action. *Moll, supra* at 24.

In plaintiff's motion for new trial, she complained of Mr. O'Rourke's failure to provide a substantial defense. While Judge Elliott did not rule on ineffective assistance of counsel, it is clear by plaintiff's allegations in her motion for new trial, that she knew that Mr. O'Rourke's failure to provide a substantial defense was the possible cause of her harm. Therefore, discovery of plaintiff's cause of action occurred no later than March 27, 1987, some thirty-two months before

[9] Even if we were to accept that the plaintiff could not discover her claim before obtaining a final judgment of acquittal in the underlying matter, the plaintiff's action would still be barred because she did not file her claim until slightly more than six months later. However, we do not accept this liberal interpretation of the discovery provision as explained above.

she filed her malpractice claim. Thus, her suit is barred by the six-month discovery provision.

Even where the relevant statutory time periods have elapsed, a plaintiff's claim may not be barred if tolling of the statute has occurred. Tolling applies in certain well-defined instances.[10] This is not one of those instances. The statute of limitations is not tolled by an appeal of the underlying matter. *Luick* and *Hayden, supra.*

The literal interpretation we apply today conforms with the policies underlying the statute of limitations as annunciated in *Moll* at 14, and *Bigelow v Walraven,* 392 Mich 566, 576; 221 NW2d 328 (1974). The statute of limitations affords the opposing party a fair opportunity to defend, relieves the court system from dealing with "stale" claims, and protects potential defendants from protracted fear of litigation. It is a valid defense that should be available to defendants and construed by courts as specifically provided by the Legislature.

### III

The plaintiff argues that this case does not involve a statute of limitations issue, but rather a definitional issue. She submits that a required element of a cause of action for legal malpractice, in the context of an underlying criminal conviction, is final postconviction relief.

The Court of Appeals alluded to this definitional approach, but, did not fully adopt it. It stated the issue and its holding as follows:

The question before us, one of first impression in

---

[10] Examples of tolling include: disability due to infancy, insanity, or imprisonment at accrual of claim, MCL 600.5851; MSA 27A.5851, absence from the state, MCL 600.5853; MSA 27A.5853, and fraudulent concealment, MCL 600.5855; MSA 27A.5855.

this state, is when the claim for legal malpractice arising out of a criminal conviction accrues. Plaintiff argues that her cause of action did not accrue until April 19, 1988 [sic], when the judgment of acquittal became *final.* We agree.

We follow the Alaska Supreme Court, *Shaw v State Dep't of Admin, PDA,* 816 P2d 1358 (Alas, 1991), in holding that a convicted criminal defendant must obtain postconviction relief before pursuing an action for legal malpractice against trial counsel. *We limit this holding to situations where the defendant in the underlying criminal action has indeed pursued appellate remedies. [Id.* at 507-508. Emphasis added.]

While the Court stated it was adopting the reasoning and holding of *Shaw,* it did *not* adopt the rule of the *Shaw* court, which made some sort of appellate relief from the previous criminal conviction a necessary element of the claim. Instead, the Court stated that only if appellate remedies are in fact sought, will successful postconviction relief be a required element.

The Court further departed from *Shaw,* and other cases like it, by requiring *final* postconviction relief.

The Court of Appeals opinion gives no rationale for these departures from the rule other jurisdictions have adopted in making appellate relief a required element of this type of legal malpractice claim. Perhaps the Court's "half-way" definitional rule, and its lack of analysis supporting that rule, speak to a recognition of problems inherent in the *Shaw* definitional approach.[11]

---

[11] Jurisdictions considering the issue are split regarding whether appellate relief should be a required element. Those answering yes include: Alaska, *Shaw, supra;* New York, *Carmel v Lunney,* 70 NY2d 169; 511 NE2d 1126 (1987); Massachusetts, *Glenn v Aiken,* 409 Mass 699; 569 NE2d 783 (1991); and Oregon, *Stevens v Bispham,* 316 Or 221; 851 P2d 556 (1993).

The definitional issue inevitably rears its head when the statute of limitations defense is made by a defendant attorney. In an effort to get around the defense, a plaintiff argues that his cause of action did not accrue until all of the elements of his claim had occurred. Harm and causation being the easiest elements to manipulate, the plaintiff argues that until postconviction relief was obtained, he could not have discovered that the attorney was the proximate cause of his harm, or that ascertainable harm had even occurred.

Rather than analyzing discovery of harm and proximate cause under typical discovery-rule analysis, some courts have held that, as a matter of law, legally cognizable harm cannot occur until the wrongly convicted criminal defendant has obtained appellate relief.[12] This could be called the "no relief-no harm" rule. Other courts have simply adopted the definitional approach for policy reasons. We do not accept the "no relief-no harm" rule because it is a legal fiction with serious analytical flaws.[13] We also cannot adopt the defini-

Those answering no include: Missouri, *Jepson v Stubbs,* 555 SW2d 307 (Mo, 1977); District of Columbia, *McCord v Bailey,* 204 US App DC 334; 636 F2d 606 (1980); Alabama, *Mylar v Wilkinson,* 435 So 2d 1237 (Ala, 1983); Kansas, *Bowman v Doherty,* 235 Kan 870; 686 P2d 112 (1984); Ohio, *Krahn v Kinney,* 43 Ohio St 3d 103; 538 NE2d 1058 (1989); and Pennsylvania, *Quick v Swem,* 390 Pa Super 118; 568 A2d 223 (1989).

[12] See, e.g., *Stevens,* n 11 *supra.*

[13] Rather than being a legal definition of harm, the rule is a legal fiction that divorces the law from reality. "[P]ersons convicted of a crime will be astonished to learn that, even if their lawyers' negligence resulted in their being wrongly convicted and imprisoned, they were not harmed when they were wrongly convicted and imprisoned but, rather, that they are harmed only if and when they are exonerated."

This legal fiction of "harm" subverts the policy of a statute of limitations by extending indefinitely the time in which this type of legal malpractice claim could potentially accrue. Rather than the two years after last day of service or six months after discovery limitation periods the Legislature has set forth, there would be no definite limitation period. *Stevens,* n 11 *supra* at 239 (Unis, J., concurring).

tional approach on policy grounds because we find the policy arguments unpersuasive when balanced against the policies underlying the statute of limitations and our obligation to uphold the Legislature's intent as clearly evidenced in its enactment of that statute.

The court in *Shaw* reasoned that requiring a malpractice plaintiff to first obtain postconviction relief is desirable because it furthers the policy of conserving judicial resources. If postconviction relief is successful, issues raised and decided in the criminal proceeding that are relevant to proximate cause and damages issues in the malpractice suit will have already been decided.[14] The *Shaw* court also reasoned that if postconviction relief is denied, collateral estoppel will eliminate frivolous malpractice claims, thereby promoting judicial economy.

Issue preclusion and collateral estoppel should be utilized in the appropriate case.[15] However, the availability of these devices should not lead to a

---

[14] In these instances, issue preclusion will be used in the malpractice plaintiff's favor, saving the court in the civil suit from relitigating these issues.

[15] We decline to address today the question of when issue preclusion and collateral estoppel may be appropriately applied. See Potel, *Criminal malpractice: Threshold barriers to recovery against negligent criminal counsel,* 1981 Duke L J 542, 551-556, wherein the author criticizes broad use of collateral estoppel as a bar to malpractice claims, especially where the issues or factual allegations are not identical.

> Before barring a criminal malpractice claim on the basis of collateral estoppel, a court should carefully determine what issues were adjudicated in the prior litigation. If it is not clear that the same issues were presented, the plaintiff should be provided the opportunity to prove his case. Even if the malpractice court finds that a substantially identical issue was considered in the prior proceeding, collateral estoppel should not automatically be applied. No danger of burdening the attorney with the necessity of relitigating an issue arises because of this judicial approach. The attorney was not a party to the prior proceeding, so he will have to defend himself only once. The rationale underlying the estoppel doctrine thus is not particu-

subversion of the statute of limitations by allowing a criminal defendant to first obtain postconviction relief before starting the clock on the limitation period.

Another concern of the court in *Shaw* was a perceived unfairness in making a criminal defendant, whose energy and attention will necessarily be focused on obtaining relief from a wrongful conviction, to also worry about filing and presenting his potential malpractice claim. A related problem is that the defendant attorney may produce privileged information against his former client during discovery or trial in the civil suit that may be damaging to the criminal defendant's case in seeking postconviction relief. While we recognize these concerns may present problems for the criminal defendant, the Legislature has enacted a statute of limitations for professional malpractice claims that we are bound to uphold.

We believe there is a workable solution to the concerns regarding judicial economy and potential unfairness to criminal defendants.

As pointed out by defendants, situations are numerous where a criminal matter is pending before a court, and a related civil suit arising out of that criminal matter is also pending. Commonly, the court presented with the civil suit will yield to the criminal matter, allowing it to proceed so that the rights of the criminal defendant will not be infringed. Thus, the civil and criminal cases proceed along separate tracks, without danger that the two will collide producing waste of judicial resources or unfairness to the criminal defendant.

larly compelling in the criminal malpractice context, and a court that has any doubts about the identity of issues or the fairness of the prior proceeding should not hesitate to allow the client a hearing. [*Id.* at 556.]

The "two track" approach adopted today recog-
nizes that a criminal defendant who has initiated
postconviction relief proceedings should have
knowledge sufficient to have discovered his claim
against his initial defense attorney for statute of
limitation purposes. In order to put the defense
attorney on notice that he will have to defend
against a malpractice claim, and thereby honor
the policies underlying the statute of limitations,
the criminal defendant must file his malpractice
complaint within six months of discovering the
existence of the claim, or within two years of his
attorney's last day of service in the matter in
which the alleged negligence occurred.

With his claim preserved, he can and should
seek a stay in the civil suit until the criminal case
is resolved. The trial court handling the civil suit
would have discretion regarding whether the stay
would continue until judgment in the criminal
matter is final or, if after the initial judgment on
postconviction relief, justice would permit going
forward with the civil suit while the appeal pro-
cess in the criminal matter continues until final
determination.

Utilizing this "two track" approach provides the
best balance between the competing concerns of
fairness to criminal defendants and allowing the
attorney a fair opportunity to defend.

Both the court in *Shaw* and the Court of Ap-
peals in this case also relied on the law of mali-
cious prosecution in determining that a successful
motion for postconviction relief is a prerequisite to
maintaining an action for legal malpractice in a
criminal case. *Shaw, supra* at 1362; *Gebhardt,
supra* at 509. Termination of the underlying crimi-
nal proceedings in the plaintiff's favor is a neces-
sary element of the civil cause of action for mali-

cious prosecution. *Parisi v Michigan Twps Ass'n,* 123 Mich App 512; 332 NW2d 587 (1983).

However, as the Court in *Luick* at 807, n 1, noted, *Parisi* "does not provide an answer to the question now before us. . . . In this case, a cause of action for malpractice could well exist regardless of the outcome of post-judgment proceedings in the underlying case."[16]

## IV

We now turn to Mr. O'Rourke's request for miscellaneous relief to correct the inaccurate syllabus issued by the Court of Appeals reporter and published with this case in the *Michigan Appeals Reports.*

In lieu of issuing a new hard-cover volume of *Michigan Appeals Reports,* at substantial expense to the state, or providing paste-over pages, which have limited error-correction value given that some libraries and many practitioners fail to add these to the books, we elect to correct the error here, by making clear how the syllabus should read.[17] Given that we are reversing the Court of Appeals decision, and those who look to the Court of Appeals opinion should be alerted to read this

---

[16] A final argument made in *Shaw* and by the Court of Appeals is that defining successful postconviction relief as a required element of legal malpractice arising from negligence in a criminal proceeding will establish a bright-line rule to aid courts in resolving statute of limitations issues. Final postconviction relief would trigger running of the statute.

There is a simple answer to this argument. Our Legislature has already established a bright-line rule. The statute of limitations is triggered on the last day of the attorney's service to the client in the underlying matter. The only exception provided for by the Legislature is where the client could not have discovered his cause of action by this last day of service. In this instance, the client has six months after discovering his claim to file suit.

[17] The original syllabus as published incorrectly stated that Ms. Gebhardt was acquitted after retrial and that one of the grounds for granting a new trial was ineffective assistance of counsel.

opinion, we believe this solution adequately redresses the error and the harm to reputation Mr. O'Rourke claims to have suffered.

This first paragraph of the syllabus appearing before the opinion, at 506, should be amended to read:

> Barbara K. Gebhardt brought a malpractice action in the Genesee Circuit Court against attorney Jerome O'Rourke and the law firm of O'Rourke, Goldstein, Joseph & Kelly, P.C., relating to their representation of her at a criminal trial and sentencing. Before bringing the malpractice action, she retained other counsel, moving for new trial. Rather than granting Ms. Gebhardt a new trial, the circuit court, Philip C. Elliott, J., entered an order of acquittal on the basis of insufficient evidence. In the malpractice action, the circuit court, Earl E. Borradaile, J., granted summary disposition for the defendants, ruling that the malpractice action was barred by the statute of limitations, MCL 600.5805(4), 600.5838; MSA 27A.5805(4), 27A.5838, because it was brought more than two years after the defendants last represented the plaintiff at her sentencing and more than six months after she should have discovered her claim. The plaintiff appealed.

We reiterate that Ms. Gebhardt was not acquitted after retrial. Rather, Judge Elliott acquitted her without retrial. We also emphasize that Judge Elliott did not make a finding that Mr. O'Rourke had given ineffective assistance of counsel to Ms. Gebhardt during her criminal trial.

V

The explicit language of MCL 600.5805; MSA 27A.5805 and MCL 600.5838; MSA 27A.5838, controls the determination of when a cause of action

for legal malpractice arising from negligent representation in a criminal case accrues. We hold that a criminal defendant's legal malpractice action accrues on the last day of his attorney's professional service in the underlying criminal matter out of which the negligence arose, after which time he has two years to file suit. Further, a criminal defendant's malpractice suit will not be barred by the two-year provision if he files within six months of when he discovers, or should have discovered, his malpractice claim.[18] We also hold that successful postconviction relief is not a prerequisite to the maintenance of a claim for legal malpractice arising out of negligent representation in a criminal matter.

The statute of limitations imposes on a plaintiff seeking redress from professional malpractice the duty to timely file suit. The Legislature has provided the limitations defense to afford malpractice defendants a fair opportunity to defend, relieve them from protracted fear of litigation, and relieve the courts from hearing stale claims. Because Ms. Gebhardt did not file suit within two years of Mr. O'Rourke's appearance at her sentencing for the criminal charge, which was his last day of professional service, nor within six months after she moved for new trial, which was when she should have discovered her claim, the statute of limitations bars her suit.

Accordingly, we reverse the Court of Appeals decision.

---

[18] In so holding, we reject the distinction between negligence by omission and negligence by commission made by the Court of Appeals in cases decided after our decision in *Biberstine*, n 8 *supra.* We view *Biberstine* as distinguishable because it did not apply the 1975 amendment of § 5838, as previously discussed. Therefore, the artificial distinction between acts of omission and acts of commission, seen in *Gambino v Cardamone*, 163 Mich App 574; 414 NW2d 896 (1987), is not necessary because there is no need to make *Biberstine* appear consistent with later cases.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, and RILEY, JJ., concurred with MALLETT, J.

GRIFFIN, J. I concur except as to part III.