# STATE OF MICHIGAN

# COURT OF APPEALS

---

SUZANNE RHODES,

Plaintiff-Appellant,

v

JOHN F. SCHAEFER, PLLC, and GATES LAW
OFFICE, PC,

Defendants-Appellees.

UNPUBLISHED
November 12, 2015

No. 324102
Macomb Circuit Court
LC No. 2013-002911-NM

---

Before: JANSEN, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the order granting summary disposition in favor of defendants. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from defendants' representation of plaintiff during her divorce from Norman Zapczynski ("Norman"). Norman owned a public works construction company named Posen Construction, Inc. ("Posen"). Plaintiff and Norman signed an antenuptial agreement before they were married in 2002. In 2006, plaintiff hired Lynn Gates ("Gates"), the sole shareholder of defendant Gates Law Office, PC ("GLO"), to represent her in renegotiating the antenuptial agreement. Gates informed plaintiff that she should be cautious about signing documents and advised her to avoid signing anything related to Norman. However, plaintiff signed an agreement in late 2006 to indemnify Safeco Insurance Company of America ("Safeco"), a construction bonding company, against losses sustained in relation to projects that Posen undertook. The agreement contained a termination provision providing that the indemnitor may terminate the agreement with regard to liability for *future* bonds by giving written notice stating the effective date of the termination.

Sometime in late 2006 or early 2007, plaintiff decided to divorce Norman. In January 2007, plaintiff met with Gates and Mark Bank ("Bank"), of defendant John F. Schaefer, PLLC ("JFS"). The parties determined that Gates and Bank would represent plaintiff in her divorce. On January 22, 2007, Gates sent plaintiff a confirmation letter detailing the scope of the representation and the fees associated with the representation. The letter provided that there was a minimum engagement fee of $40,000 for the services provided, as well as a results-oriented fee "which can only be assessed at the conclusion of the matter and which we have committed will

-1-

not exceed ten percent (10%) of that which you receive by way of your total result, irrespective of the amount of time we spend on your matter." The letter provided that the results-oriented fee was not a contingent fee.

Defendants commenced the divorce action on January 18, 2007. According to defendants, plaintiff did not disclose the existence of the Safeco indemnity agreement to them during the divorce proceedings. In addition, defendants sent Norman a set of discovery requests requesting information and documentation regarding Norman's liabilities, "including, but not limited to, unsecured personal debts, debts secured by collateral, credit cards, open charges or any other obligation, including those as guarantor or surety." Norman responded that he has an obligation to his former wife, but did not disclose any other liabilities.

A judgment of divorce was entered on May 23, 2008. The judgment of divorce included a provision stating, "IT IS FURTHER ORDERED that upon entry of this Judgment of Divorce the attorneys of record are released from further obligations in connection with any appeals or post-judgment proceedings unless specifically re-retained to act on behalf of their former clients." Plaintiff paid defendants for their work during the divorce proceedings, but Gates did not send plaintiff a letter terminating the representation. However, according to Bank, defendants sent plaintiff a "closing binder." Plaintiff appealed the divorce case to this Court. This Court remanded the case to the trial court. See *Zapczynski v Zapczynski*, unpublished opinion per curiam of the Court of Appeals, issued November 24, 2009 (Docket No. 285982). The judgment of divorce was amended on December 17, 2010. According to Gates, the parties reached verbal agreements regarding the fees for the postjudgment representation and decided to use an hourly rate. According to plaintiff, Bank and Gates asked plaintiff for a $50,000 bonus during a conference call at the end of the divorce proceedings, which the parties negotiated down to $25,000. According to defendants, the $25,000 constituted the results-oriented fee mentioned in the letter from Gates to plaintiff. Plaintiff also paid defendants their hourly rates for the work they performed on appeal and on remand.

On July 26, 2011, a representative of Safeco sent a letter to plaintiff demanding $18,266,489.18 as losses under the indemnity agreement. Safeco sued plaintiff, along with several others, to collect the losses. According to defendants, the first time they learned about the Safeco indemnity agreement was in August 2011. On August 31, 2012, plaintiff settled with Safeco by paying $500,000. Defendants filed a motion in the underlying divorce case for Norman to indemnify, defend, and hold plaintiff harmless from and against all liability with regard to the Safeco indemnity agreement on September 28, 2011. Plaintiff and Norman ultimately entered into an indemnification agreement, in which Norman agreed to indemnify, defend, and hold plaintiff harmless with regard to the losses she sustained in relation to Safeco indemnity agreement. Norman ultimately refused to indemnify plaintiff, and defendants filed a motion in the underlying divorce case to enforce the indemnity obligation on December 3, 2012. The court refused to decide on the motion until the dispute between Safeco and Posen was resolved. Plaintiff paid defendants at their hourly rates with regard to the postjudgment motions.

On July 19, 2013, plaintiff filed the complaint in this case, alleging (1) legal malpractice, (2) breach of contract, and (3) breach of fiduciary duty. Plaintiff contended that defendants committed legal malpractice when they told her that she would be free of Norman's obligations without taking steps to protect her. Plaintiff also alleged that defendants breached their fiduciary

duty to her by proposing a contingent fee agreement, entering into an oral contingent fee arrangement, refusing to turn over plaintiff's file in order to delay the litigation, and obtaining a bonus from plaintiff. On August 12, 2014, GLO moved for summary disposition under MCR 2.116(C)(10), and JFS joined the motion. GLO pointed out that plaintiff failed to inform defendants of the indemnity agreement and argued that the results-oriented fee did not constitute a contingent fee. On the same day, JFS filed a motion for summary disposition under MCR 2.116(C)(7), which GLO joined. JFS argued that plaintiff's legal malpractice claim was barred by a two-year limitations period since the representation ended, at the latest, when the amended judgment of divorce was entered on December 17, 2010.

On August 26, 2014, plaintiff filed a brief in opposition to defendants' motions for summary disposition. Plaintiff argued that she provided a copy of the Safeco indemnity agreement to defendants at the beginning of the lawsuit and that defendants' file contained a letter regarding the Safeco indemnity agreement and discovery requests relating to Posen's bonding. Plaintiff further contended that JFS's last day of service was February 24, 2013, and GLO's last day of service was October 20, 2012. She pointed out that defendants continued to bill her under the original fee agreement. Plaintiff also argued that defendants violated their fiduciary duty of loyalty because the fee agreement included a contingent fee, which was unethical and void as against public policy.

The trial court held a hearing on the motions for summary disposition on September 2, 2014, and the parties argued consistent with the motions and brief in opposition. On September 29, 2014, the trial court issued an opinion and order. The court concluded that the two-year limitations period expired since defendants stopped serving plaintiff with regard to the matter from which the malpractice claim arose on May 23, 2008. The court reasoned that plaintiff should have known about her claim at the time the judgment of divorce was entered since she signed the Safeco indemnity agreement before filing for divorce. Therefore, the court determined that summary disposition was proper with regard to the legal malpractice claim under MCR 2.116(C)(7). The court also determined that plaintiff's remaining claims constituted "malpractice claims in disguise," and ruled that they were also time-barred under MCR 2.116(C)(7). Finally, the court did not reach a decision with regard to whether summary disposition was proper under MCR 2.116(C)(10) because it reasoned that issue was moot.

## II. LEGAL MALPRACTICE

Plaintiff argues that the trial court erred when it granted summary disposition in favor of defendants under MCR 2.116(C)(7) since she produced evidence showing that defendants continued to represent her in the underlying litigation within the two-year limitations period. We disagree.

The trial court granted summary disposition in favor of defendants under MCR 2.116(C)(7). "Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred by the statute of limitations." *Dillard v Schlussel*, 308 Mich App 429, 442; 865 NW2d 648 (2014). We review de novo the trial court's decision to grant a motion for summary disposition under MCR 2.116(C)(7). *Id*. A defendant generally has the burden to prove facts that bring the case within the statute of limitations. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014). "In reviewing a motion for summary disposition

under MCR 2.116(C)(7), we accept the contents of the complaint as true unless the moving party contradicts the plaintiff's allegations and offers supporting documentation." *Kloian v Schwartz*, 272 Mich App 232, 235; 725 NW2d 671 (2006). "We consider affidavits, depositions, admissions, and other documentary evidence if the supporting materials are admissible." *Id*. If there is no factual dispute, the issue is a question of law that we review de novo. *Id*.

A plaintiff must bring a legal malpractice claim within two years of when the malpractice claim first accrued, or within six months after the plaintiff discovered or should have discovered the existence of the claim, whichever is later. See MCL 600.5805(1) and (6); MCL 600.5838(2); *Kloian*, 272 Mich App at 237. MCL 600.5838(1) provides:

> Except as otherwise provided in [MCL 600.5838a or MCL 600.5838b], a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession a*ccrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose*, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. [Emphasis added.]

"Special rules have been developed in an effort to determine exactly when an attorney 'discontinues serving the plaintiff in a professional . . . capacity' for purposes of the accrual statute." *Kloian*, 272 Mich App at 237 (citation omitted). For example, representation ceases when the client or the court relieves the attorney of the obligation to serve the client. *Id*. A legal malpractice claim also accrues when the attorney sends notice of withdrawal as the final act of professional service. *Id*. at 238. However, it is not necessary that an attorney receive or send a formal notice terminating the professional relationship. See *id*. Instead, accrual occurs on the last day that the attorney renders professional services for the client. *Gebhardt v O'Rourke*, 444 Mich 535, 543; 510 NW2d 900 (1994). In other words, " '[a] lawyer discontinues serving a client . . . upon completion of a specific legal service that the lawyer was retained to perform.' " *Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 538; 599 NW2d 493 (1999) (citation omitted). Notably, this Court has held that there is an "important distinction between an ongoing attorney-client relationship and a remedial effort concerning past representation." *Id*. Additionally, "Lack of ripeness, i.e., that not all the elements of the tort have been discovered, is irrelevant to the two-year limitation period." *Gebhardt*, 444 Mich at 543-544.

Plaintiff hired defendants for the specific legal service of representing her during the divorce proceedings. A January 22, 2007 letter from Gates to plaintiff detailing the scope of the representation and the fees associated with the representation provided that defendants represented plaintiff with regard to "divorce proceedings between [plaintiff] and [her] husband." The letter provided that the entry of the ultimate judgment of divorce constituted the conclusion of the matter. The judgment of divorce was entered on May 23, 2008. The judgment of divorce provided that defendants were released from further obligations in connection with any appeals or postjudgment proceedings after entry of the judgment of divorce unless specifically reretained to act on behalf of plaintiff. Defendants sent plaintiff a "closing binder" after the initial divorce case concluded. The case was appealed, and this Court remanded the case to the trial court. *Zapczynski*, unpub op at 15. Defendants represented plaintiff on appeal and on remand. The trial court entered an amended judgment of divorce on December 17, 2010. There were no

-4-

further amendments to the judgment of divorce or proceedings relating to the divorce after December 17, 2010, and plaintiff did not pursue an appeal. Thus, the December 17, 2010 judgment of divorce constituted the ultimate judgment of divorce that concluded the matter, and plaintiff's claim accrued on the date that the amended judgment of divorce was entered. See MCL 600.5838(1). Plaintiff was therefore required to file the complaint by December 17, 2012, which she failed to do. See MCL 600.5838(1); *Bauer*, 235 Mich App at 538. Accordingly, the trial court did not err in ruling that the two-year limitations period barred plaintiff's claim. See MCL 600.5838(1); *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 288 n 32; 856 NW2d 206 (2014) (" 'A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.' ") (citation omitted).

Plaintiff argues that the representation continued after she requested that defendants aid her in obtaining relief from Norman for the Safeco indemnity agreement. However, the representation that defendants rendered constituted additional legal services since the legal services did not involve the divorce proceedings. Although defendants filed additional motions in the underlying divorce case in order to obtain an indemnity agreement from Norman, the representation did not involve the divorce proceedings. Instead, defendants' actions were more akin to remedial efforts concerning past representation. See *Bauer*, 235 Mich App at 538. Defendants had no obligation to aid plaintiff in obtaining relief from Norman for the Safeco indemnity agreement, and plaintiff was able to retain new counsel to represent her against Norman. Therefore, defendants did not continue to serve plaintiff with regard to the matters out of which the claim for malpractice arose. See MCL 600.5838(1). Thus, defendants discontinued serving plaintiff with regard to the divorce proceedings at the latest when the amended judgment of divorce was entered on December 17, 2010. See *id*.; *Kloian*, 272 Mich App at 237. Therefore, the trial court did not err in granting summary disposition in favor of defendants since plaintiff failed to bring the claim within two years of when it accrued. See MCL 600.5805(1) and (6); MCL 600.5838(1); *Bauer*, 235 Mich App at 538.

Plaintiff argues that the "last treatment rule" outlined in *Levy v Martin*, 463 Mich 478; 620 NW2d 292 (2001), controls in this case. The Michigan Supreme Court clarified in *Levy* that when a plaintiff receives professional services with regard to the specific event out of which the injury arises, as well as continuing services that are related to the specific event, the claim accrues when the continuing services end. *Id*. In *Levy*, the plaintiffs sued their accountants, who prepared annual tax returns for the plaintiffs from 1974 to 1996, after having to pay additional taxes, penalties, and interest with regard to the 1991 and 1992 tax returns. *Id*. at 480-481. The Michigan Supreme Court determined that the plaintiffs had a continuing relationship with the defendants to prepare the plaintiff's taxes that did not end until the year before the complaint was filed. *Id*. at 481, 486-487. The Court based its decision on the client's reliance on the account's skills and effectiveness until the client and accountant terminate the relationship. *Id*. at 485. The Court noted, " '[A] client who entrusts preparation of annual tax returns to an accountant is provided with an assurance of professional preparation of the tax returns that induces the client to take no further action regarding those matters until it is time to prepare the next year's tax returns.' " *Id*. (citation omitted). The Court further explained that the plaintiffs received "generalized tax preparation services" from the defendants, rather than professional advice for a specific problem. *Id*. at 489. The Court noted that the situation may have been different had the defendants offered evidence indicating that each tax preparation was discrete. *Id*. at 489 n 19.

This case is distinguishable from *Levy* since plaintiff did not have an ongoing relationship with defendants. Instead, plaintiff hired defendants for the specific purpose of representing her in the divorce proceedings. When that representation ended, plaintiff hired defendants to represent her in a separate action against Norman with regard to the Safeco indemnity agreement. Thus, this is not a situation where plaintiff had an ongoing relationship with defendants that included continuing or periodic services. See *Levy*, 463 Mich at 485. Rather, plaintiff hired defendants for the limited reason of obtaining a judgment of divorce, and she later hired defendants with regard to the limited reason of seeking indemnity from Norman. See *id*. Therefore, the last treatment rule does not dictate the outcome in this case. See *id*.

Plaintiff's claim is also barred by the six-month discovery rule. Under the six-month discovery rule, the plaintiff has the burden of proof and only needs to discover a possible cause of action. MCL 600.5838(2); *Gebhardt*, 444 Mich at 544. At the latest, plaintiff knew she had a possible cause of action against defendants when she received the letter from Safeco on July 26, 2011. Under the discovery rule, plaintiff was required to bring her claim by January 26, 2012, which she failed to do. See MCL 600.5838(2). Regardless, under the two-year limitations period, plaintiff was required to bring her claim by December 17, 2012, which was later than the six-month discovery limitations period. See *id*. She failed to do so. Therefore, plaintiff's claim was not timely. See *id*.

Plaintiff also argues that the trial court erred when it refused to consider the documents that she presented as evidence in response to the motions for summary disposition. MCR 2.116(G)(5) provides:

> The affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court when the motion is based on subrule (C)(1)-(7) or (10). Only the pleadings may be considered when the motion is based on subrule (C)(8) or (9).

Plaintiff fails to establish that the trial court did not consider the evidence that she presented as attachments to her brief in opposition to the motions for summary disposition. At the beginning of the hearing, the following exchange took place between plaintiff's attorney and the trial court:

> *The Court*: Good morning. Mr. Olson, do you expect me to read this?
>
> *Mr. Olson*: Yes, Judge.
>
> *The Court*: I didn't. And if you ever file another motion in this Court, I've only got four months because I won't be here, I'll hold in you [sic] contempt of court. This is ridiculous. In your brief you cited what you wanted to tell me.
>
> *Mr. Olson*: I did.
>
> *The Court*: You'd expect me or any other judge or any law clerk to read through this, you are dreaming. Don't ever do it again in my court.

-6-

It is your motion. Go ahead

*Mr. Olson*: Actually, Judge, it is defendant's motion.

*Mr. Scott*: It is our motion.

*The Court*: I'm sorry.

*Mr. Scott*: Judge, I'll start.

*The Court*: I've read everything other than his 600 pages of exhibits.

Thus, the court indicated that it read plaintiff's brief in opposition to the motions for summary disposition, but not the corresponding exhibits. The court also stated that it would not hold the length of plaintiff's brief in opposition against plaintiff in its opinion. The court later stated that it would not consider plaintiff's affidavit since the affidavit was used to refute plaintiff's deposition testimony previously given under oath with regard to whether she provided a copy of the Safeco indemnity agreement to Gates. Plaintiff's attorney requested that the court read the portion of the affidavit that did not pertain to whether plaintiff provided Gates with the Safeco indemnity agreement. Although the trial judge did not state whether he would read the remainder of the affidavit, he did not refuse the request on the record.

The trial court's refusal to read the portion of the affidavit relating to whether plaintiff provided defendants with the Safeco indemnity agreement did not constitute error. "[A] witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006). Plaintiff testified during her deposition that she did not inform Gates or Bank of the Safeco indemnity agreement because she did not think it was important at the time. She later stated in her affidavit that she did provide a copy of the Safeco indemnity agreement to Gates at the beginning of the representation and remembered doing so when she received a copy of the Safeco indemnity agreement during discovery as part of her file with JFS. The trial court properly refused to consider plaintiff's statements in her affidavit regarding the indemnity agreement since her deposition could not be contradicted by her affidavit in an attempt to defeat the motion for summary disposition under MCR 2.116(C)(10). See *id*.

In addition, there is no indication that the court failed to consider any of plaintiff's evidence other than her statement in her affidavit. Although the court stated on the record that it did not read plaintiff's exhibits at the time of the hearing, the court took the matter under advisement, and the opinion and order was issued nearly one month after the hearing. There is no indication in the opinion and order that the court failed to consider the documents that plaintiff attached to her brief in opposition to the motions for summary disposition. Instead, the discussion that occurred during the hearing indicates that the trial court was simply unable to read over the 600 pages of exhibits that plaintiff submitted with her brief in opposition only one week before the hearing. Plaintiff fails to show that the court was required to consider the documentary evidence before it conducted the hearing on the motions for summary disposition or that the trial court failed to read the documents when it took the matter under advisement. Therefore, the trial court did not violate MCR 2.116(G)(5). See MCR 2.116(G)(5). For the

-7-

reasons discussed above, the trial court did not err in granting summary disposition in favor of defendants under MCR 2.116(C)(7) since plaintiff's legal malpractice claim was barred by the two-year limitations period. See *Dillard*, 308 Mich App at 442.

## III. BREACH OF FIDUCIARY DUTY

Plaintiff next argues that the trial court erred when it dismissed her breach of fiduciary duty claim and reasoned that the clam was a disguised legal malpractice claim. We disagree.

" 'Decisions concerning the meaning and scope of pleadings fall within the sound discretion of the trial court.' " *Lockridge v Oakwood Hosp*, 285 Mich App 678, 692; 777 NW2d 511 (2009) (citation omitted). We review a trial court's decision regarding the meaning and scope of pleadings for an abuse of discretion, which occurs "only when its decision results in an outcome falling outside the range of principled outcomes." *Id*.

The limitations period that applies to a claim depends on the true nature of the claim. *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710; 742 NW2d 399 (2007). " 'The type of interest allegedly harmed is the focal point in determining which limitation period controls.' " *Id*. (citation omitted). "It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Id*. at 710-711.

A legal malpractice claim allows a plaintiff to recover for negligence by an attorney in an attorney-client relationship with the plaintiff that causes an injury to the plaintiff. See *Kloian*, 272 Mich App at 240. In contrast, "a breach of fiduciary duty requires a more culpable state of mind than the negligence required for malpractice. Damages may be obtained for a breach of fiduciary duty when a 'position of influence has been acquired and abused, or when confidence has been reposed and betrayed.' " *Meyer and Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 47; 698 NW2d 900 (2005) (citation omitted). "When a fiduciary relationship exists, the fiduciary has a duty to act for the benefit of the principal regarding matters within the scope of the relationship." *Id*. at 43. There is a fiduciary relationship when there is a placement of trust, confidence, reliance, and faith in the judgment and advice of another person. *Id*. Thus, a cause of action for breach of fiduciary duty requires a more culpable frame of mind than a claim for legal malpractice. See *id*.

Plaintiff failed to allege facts in her complaint to support a breach of fiduciary duty claim. First, plaintiff failed to allege that defendants abused their position of influence or betrayed her confidence in constructing the fee agreement. Instead, plaintiff alleged in the complaint that defendants, acting as agents of plaintiff, breached their duty of loyalty when they entered into a contingent fee arrangement with plaintiff, entered into an oral contingent fee arrangement, and obtained a bonus from plaintiff.[1] Plaintiff failed to allege that she did not understand the nature

---

[1] Plaintiff also alleged that defendants breached their fiduciary duty of loyalty when they attempted "to avoid this action by delaying disclosing Plaintiff's file to Plaintiff." However, since plaintiff does not argue on appeal that the failure to turn over the file constituted a breach

of the fee arrangement or that defendants deceived her at any point during the discussions of the fee agreement. Instead, the letter from Gates to plaintiff discussed in detail the nature of the fee agreement between the parties. Plaintiff did not allege that defendants improperly influenced her into accepting the fee agreement or that there were any circumstances under which she would have declined to enter into the fee agreement. Thus, plaintiff's claim was essentially a disguised legal malpractice claim since the gravamen of plaintiff's claim was more akin to a breach of the standard of care than a breach of fiduciary duty. See *Kloian*, 272 Mich App at 240; *Prentis Family Foundation*, 266 Mich App at 47. Therefore, the trial court did not err in determining that plaintiff's breach of fiduciary duty claim was merely a disguised legal malpractice claim. See *Adams (On Reconsideration)*, 276 Mich App at 710.

Second, even assuming that the claim was not a disguised legal malpractice claim, plaintiff failed to allege a claim for breach of fiduciary duty. Plaintiff alleged that the fee arrangement constituted an impermissible contingent fee under MPRC 1.5(d). However, the Michigan Rules of Professional Conduct do not give rise to a private cause of action for damages. See *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 192-193; 650 NW2d 364 (2002), citing MRPC 1.0(b). MRPC 1.0(b) provides, in part:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules do not, however, give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with an obligation or prohibition imposed by a rule.

Therefore, MRPC 1.5(d) did not provide a private cause of action. See MRPC 1.0(b); *Evans*, 251 Mich App at 192-193.

Plaintiff also cites caselaw indicating that the fee arrangement was void as against public policy. Plaintiff cites *McCurdy v Dillon*, 135 Mich 678, 679-681; 98 NW 746 (1904), in which the Michigan Supreme Court held that an agreement between an attorney and a client in a divorce case providing that the attorney would receive 25% of what the client recovered, which was fixed at $2,000 if the case settled, was void as against public policy. The Court reasoned that the fee arrangement would induce an attorney to promote divorce. *Id*. at 681.

However, the fee arrangement in this case is distinguishable from the fee arrangement in *McCurdy*. The fee in this case included a $40,000 minimum engagement fee, which plaintiff owed to defendants even if plaintiff reconciled with Norman, and a results-oriented fee, which would not exceed 10% of what was recovered in the divorce and which was not contingent on the amount of plaintiff's recovery in the divorce. The letter from Gates to plaintiff explained that the results-oriented fee would be based on several factors, including "[t]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," "[t]he likelihood that the acceptance of [the] case will preclude other employment by the lawyers," "[t]he amount involved and the results obtained," as well as "[t]he

---

of fiduciary duty, the issue is abandoned on appeal. See *Woods v SLB Props Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008) (" '[A]n appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.' ") (citation omitted).

experience, reputation, and ability of the lawyers performing the services." Furthermore, the letter recognized that the results-oriented fee would reflect plaintiff's "tangible and intangible objectives and goals" in the case, and that plaintiff "expressed a desire to incentivize [the] firms to conclude [the] matter on amicable and favorable terms in the shortest time period possible." Therefore, defendants did not have the incentive "to induce and advise the dissolution of the marriage ties" since defendants would recover $40,000 no matter the outcome in the case, the results-oriented fee was not directly contingent on what plaintiff recovered in the case, and the results-oriented fee took into account plaintiff's goal to conclude the case on amicable and favorable terms as soon as possible. See *McCurdy*, 135 Mich App at 681.

Additionally, plaintiff failed to establish that the fee arrangement constituted an impermissible contingent fee. In *Olson v Olson*, 256 Mich App 619, 636-637; 671 NW2d 64 (2003), this Court held that the trial court did not err in determining that the fees charged by an attorney in a " 'high end' " divorce action were reasonable. The fees included a " 'value added' " fee. *Id*. at 637. This Court noted, "Defendants own expert and attorneys for both parties established that a value enhancement clause is a common and necessary feature of retainer contracts in 'high end' divorce actions." *Id*. at 637 n 11. Although this Court did not directly address the legality of the value added provision, this Court upheld the trial court's determination regarding the reasonableness of a fee agreement in a "high end" divorce case that included a value added provision. See *id*. at 637. In this case, the letter from Gates to plaintiff provided that the divorce case included "significant assets and income" and that Norman had a net worth of over $39 million. Therefore, the results-oriented fee in this case was reasonable for the same reason that the value added fee in *Olson* was reasonable. See *id*. For the reasons discussed above, the trial court did not err in refusing to decide the breach of fiduciary duty claim.

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Michael J. Riordan