James L. NOSKE, Respondent,

v.

Joseph FRIEDBERG, et al.,
Petitioners, Appellants.

No. C7–02–1073.

Supreme Court of Minnesota.

Nov. 6, 2003.

Lawrence H. Crosby, Jay D. Olson, Crosby & Associates, St. Paul, MN, for Respondent.

Paul C. Peterson, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for Appellants.

Deborah Ellis, St. Paul, MN, Peter W. Gorman, Minneapolis, MN, for Amicus Curiae Minnesota Ass'n of Criminal Defense Lawyers.

## OPINION

PAGE, Justice.

In 2001, respondent James Noske commenced an action against appellant Joseph Friedberg for attorney malpractice arising out of Friedberg's representation of Noske at Noske's 1990 criminal trial for second-degree assault. The district court dismissed the action, finding that the six-year statute of limitations for bringing an attorney malpractice claim had run. The court of appeals reversed, concluding that Noske's cause of action did not accrue until he was granted habeas corpus relief by the federal district court in 1999. We affirm the court of appeals.

In July of 1989, Noske was arrested and charged with five counts of second-degree assault after he fired a gun in the air and then pointed it at his neighbors. Noske hired Friedberg to represent him. According to Noske, in selecting defense counsel, it was important that the person who represented him be willing to proceed on a theory of self-defense. Noske and Friedberg discussed pursuing a self-defense theory on a number of occasions, but Friedberg never pursued such a theory. Ultimately, the jury convicted Noske of one count of second-degree assault and acquitted him of the other charges.

Noske petitioned for postconviction relief in district court alleging, among other things, that he had been denied effective assistance of counsel because of Friedberg's failure to pursue self-defense as a defense to the assault charges. The postconviction court denied the petition. Noske then appealed his conviction and

sentence, as well as the denial of postconviction relief to the court of appeals. In an unpublished decision, the court of appeals affirmed the lower court in all respects. This court subsequently denied review. *See Noske v. State,* No. C0–91–2486, 1992 WL 365990 (Minn.App. Dec. 15, 1992), *rev. denied* (Minn. Jan. 28, 1993).

Noske was imprisoned on March 5, 1993, and was released from custody and placed on supervised release on January 27, 1995. On May 25, 1993, Noske petitioned for a writ of habeas corpus in federal district court seeking to have his conviction overturned and to be released from supervised release based on his claim of ineffective assistance of counsel at his state court trial. In January of 1999, the federal district court found that Noske had been denied effective assistance of counsel, granted Noske's petition for a writ of habeas corpus, and vacated his assault conviction. *Noske v. Stender,* Civil No. 4–93–518, slip op. at 22–23 (D.Minn. Jan. 7, 1999) (Memorandum Opinion and Order). In its order granting Noske's petition, the federal district court ordered that Noske could be retried on the assault charge within 90 days of the order, but the state chose not to do so. *Id.*

By complaint dated September 13, 2001, Noske commenced a legal malpractice action against Friedberg and his law firm in Hennepin County District Court based on Friedberg's alleged ineffective assistance at the 1990 trial. Friedberg moved for dismissal of the malpractice action, contending that it was barred by the applicable six-year statute of limitations found in Minn.Stat. § 541.05, subd. 1(5) (2002). The district court agreed with Friedberg and dismissed Noske's complaint. The district court reasoned that the alleged malpractice occurred during the 1990 criminal trial and that Noske suffered damages upon his conviction and subsequent incarceration, all of which occurred more than six years before his legal malpractice action commenced. On appeal, the court of appeals reversed, concluding that Noske's legal malpractice cause of action did not accrue and the statute of limitations did not begin to run until 1999, when he obtained relief from his conviction in federal court. *Noske v. Friedberg,* 656 N.W.2d 409, 416 (Minn.App.2003).

The issue we must decide is whether a legal malpractice action against a criminal defense attorney based on a claim of ineffective assistance of counsel at the plaintiff's underlying criminal trial accrues at the time of the plaintiff's conviction or when postconviction relief is subsequently granted. If we conclude that his cause of action accrued at the time postconviction relief was granted, Noske asks that we also decide whether he may use the ineffective-assistance-of-counsel determination to collaterally estop Friedberg from litigating the issue of negligence in the legal malpractice action.

 "The construction and applicability of statutes of limitations are questions of law that this court reviews de novo." *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54 (Minn.1998). "The statute of limitations for a legal malpractice action is six years." *Herrmann v. McMenomy & Severson,* 590 N.W.2d 641, 643 (Minn.1999) (citing Minn.Stat. § 541.05, subd. 1(5)). "A cause of action accrues and the statute of limitations begins to run when the cause of action will survive a motion to dismiss for failure to state a claim upon which relief can be granted." *Id.* The showing a plaintiff must make in order to survive a motion to dismiss under Minn. R. Civ. P. 12.02(e) is minimal. The plaintiff need only allege sufficient facts to state a claim. In a legal malpractice action, the facts a plaintiff must allege in order to state a claim are: "(1) the existence of an attorney-client relationship; (2) acts constitut-

ing negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; (4) that but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action." *Blue Water Corp. v. O'Toole,* 336 N.W.2d 279, 281 (Minn. 1983). Failure to establish any one of these elements defeats the entire claim. *Godbout v. Norton,* 262 N.W.2d 374, 376 (Minn.1977), *appeal dismissed,* 437 U.S. 901, 98 S.Ct. 3086, 57 L.Ed.2d 1131 (1978). That is to say, with respect to any element, if it is not "'possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded,'" the claim will be dismissed. *Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 739–40 (Minn.2000) (quoting *N. States Power Co. v. Franklin,* 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963)).

■■ Noting that Noske's lawsuit was filed almost 11 years after his conviction, Friedberg argues that the court of appeals erred in reversing the dismissal of the lawsuit. Citing *Herrmann,* Friedberg contends that Noske's cause of action accrued at the time of his conviction because it was at that point that Noske would have suffered damages as a result of the alleged ineffective assistance of counsel.[1] *See Herrmann,* 590 N.W.2d at 643. Further, Friedberg argues that Noske's lawsuit could have survived a Rule 12.02(e) motion to dismiss had the lawsuit been brought within six years of his 1990 conviction, even though Noske had not obtained postconviction relief, because each of the elements required for a plaintiff to bring a legal malpractice claim existed upon his

conviction. Friedberg, however, does not dispute that for Noske to prevail on his claim his conviction would have to be vacated. Instead, Friedberg argues that Noske's cause of action could survive a motion to dismiss under Minn. R. Civ. P. 12.02(e) as long as there is a possibility that Noske could obtain relief from his conviction, even if the cause of action could not withstand summary judgment. Recognizing that Noske might not have been able to survive a summary judgment motion absent postconviction relief, Friedberg suggests that Noske could have commenced the malpractice action, then sought to have the proceedings stayed until his postconviction claims were resolved. Friedberg also argues that to hold that the statute of limitations does not begin to run until postconviction relief is obtained would be inconsistent with our decision in *Weston v. Jones,* 160 Minn. 32, 37, 199 N.W. 431, 433 (1924), a case in which we held that a plaintiff's lack of knowledge of a cause of action will not suspend the running of the statute of limitations. Finally, Friedberg argues that delaying the accrual of the malpractice claim until postconviction relief from the underlying conviction is obtained will permit stale claims to go forward, make it difficult for criminal defense attorneys to defend themselves, and result in criminal defense attorneys being treated differently from all other attorneys sued for malpractice.

In response, Noske argues that his criminal conviction precluded him from arguing that Friedberg's ineffective assistance at his criminal trial was the proximate cause of his alleged damages, or that but for

---

1. Friedberg is correct in stating that in order for the cause of action to accrue and survive a motion to dismiss, at least some damages must occur as the result of the alleged negligence and the exact amount of damages need not be known. *Herrmann,* 590 N.W.2d at 643; *see also Bonhiver v. Graff,* 311 Minn. 111, 117, 248 N.W.2d 291, 296 (1976); *Dal-*

*ton v. Dow Chemical Co.,* 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968). However, damages are not the only element that must be satisfied in order to state a legal malpractice claim. *See Herrmann,* 590 N.W.2d at 643 n. 12. The plaintiff must be able to establish all elements of the claim. *See id.*

Friedberg's conduct he would not have been convicted. Therefore, until he obtained postconviction relief and had that conviction set aside, a legal malpractice action against Friedberg would not have been able to survive a motion to dismiss. He also makes a policy argument that an individual should not be allowed to challenge the validity of a criminal conviction in a civil malpractice action.

We have held that a person convicted of a crime may not attack a valid criminal conviction in a subsequent civil proceeding.[2] *Travelers Ins. Co. v. Thompson*, 281 Minn. 547, 555, 163 N.W.2d 289, 294 (1968). In *Travelers*, we concluded that an individual who had been convicted of murdering his wife was collaterally estopped from relitigating the issue of his guilt in a civil proceeding to obtain the proceeds of his wife's life insurance. *Id.* at 558–59, 163 N.W.2d at 296. In doing so, we reasoned that the criminal conviction was "conclusive as to the result of the civil action" because "to permit a retrial of the facts and issues already determined in the criminal proceeding would be an imposition on the courts and only tend to embarrass or bring into disrepute the judicial process." *Id.* at 555, 163 N.W.2d at 294. While *Travelers* dealt specifically with a person who was convicted of murdering his wife and who subsequently sought to collect the proceeds of his wife's insurance policy, its reasoning applies with equal force to the facts presented in this case. It would be improper to shift the burden of responsibility for a crime away from the criminal defendant to the defense attorney. As the United States Supreme Court held in *Heck*

*v. Humphrey,* civil proceedings are an inappropriate forum to relitigate an issue that was previously decided in a criminal proceeding which resulted in a conviction that has not been reversed. *See* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (invoking "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding convictions").

In order to survive a motion to dismiss a legal malpractice claim under these circumstances, a criminal defendant-plaintiff would have to show that the attorney caused the damages and that but for the attorney's negligence the criminal defendant-plaintiff would have been acquitted. Here, Noske had unsuccessfully litigated this issue in multiple state court proceedings. Having done so, allowing him to use a civil legal malpractice proceeding to challenge his valid criminal conviction would undermine the integrity of the criminal justice system.[3] Put simply, until Noske was granted habeas corpus relief in 1999, his legal malpractice claim could not withstand a Rule 12.02(e) motion to dismiss because, absent the conviction being overturned, the conviction's presumption of regularity prevented Noske from demonstrating that Friedberg proximately caused his damages and that but for Friedberg's alleged negligence he would have been acquitted. *See King v. State,* 649 N.W.2d 149, 156 (Minn.2002) (discussing a conviction's presumption of regularity). Thus, we conclude that Noske's legal malpractice claim did not accrue until he received habeas corpus relief in 1999, the point at which it was "possible on any

---

**2.** We have reached a different conclusion when the individual attacking the criminal conviction in the subsequent civil proceeding is not the individual who was convicted of the crime. *See Ill. Farmers Ins. Co. v. Reed,* 662 N.W.2d 529, 534 (Minn.2003).

**3.** Additionally, allowing a criminal defendant-plaintiff to commence a legal malpractice action before obtaining postconviction relief in the criminal matter and then staying the malpractice action until the issue of postconviction relief in the criminal matter is settled would squander scarce judicial resources.

evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded."[4] *Martens*, 616 N.W.2d at 739–40.

*Weston* does not dictate a different result as Friedberg suggests it should. *Weston* dealt with the running of the statute of limitations in a civil case involving the distribution of the proceeds of a testamentary trust. The activities giving rise to the cause of action were unknown until well after the six-year statute of limitations for commencing the action had passed. *See Weston*, 160 Minn. at 33–34, 199 N.W. at 432. We held that lack of knowledge was no basis for tolling the statute of limitations and that the statute of limitations began to run on the date the trust proceeds were distributed. *Id.* at 33–37, 199 N.W. at 433. This case is clearly distinguishable from *Weston*. First, from the *Weston* opinion, it is not clear that an issue precisely analogous to the issue presented here was before the court in *Weston*. While we held that lack of knowledge did not toll the statute of limitations, there was no discussion or analysis as to why the cause of action accrued on the date of the decree permitting distribution of the trust's proceeds. Thus, it appears that the focus was on the question of tolling and not accrual. The issue presented here is when the claim accrued. The question of tolling is not presented. Further, this case, unlike *Weston*, involves a criminal conviction which was not subject to collateral attack in a civil proceeding and which, until overturned, was "conclusive as to the result of the civil action." *Travelers*, 281 Minn. at 555, 163 N.W.2d at 294.

We note that other jurisdictions have disapproved of holding that a legal malpractice action does not accrue until a criminal conviction is overturned, describing the concept that there are no actionable damages until the criminal conviction is overturned as "a legal fiction with serious analytical flaws."[5] *Gebhardt v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900, 906 (1994). We disagree. *Gebhardt's* reasoning "fails to adequately account for: equitable principles; the difficulties of proving causation and damages in a criminal malpractice case where the plaintiff has not yet been exonerated; the existence of comprehensive post-conviction review * * *; [and] collateral estoppel." *Gibson v. Trant*, 58 S.W.3d 103, 110 (Tenn.2001). Our holding today is a recognition that as long as a valid criminal conviction is in place a legal malpractice cause of action based on a defense counsel's ineffective assistance cannot withstand a Rule 12.02(e) motion to dismiss.

---

**4.** Other jurisdictions are divided on when a legal malpractice cause of action accrues. *See generally* Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 26.17 (5th ed.2000). Many jurisdictions require that a conviction be overturned in order for a cause of action to accrue. *See, e.g., Shaw v. State*, 816 P.2d 1358, 1360 (Alaska 1991); *Steele v. Kehoe*, 747 So.2d 931, 933 (Fla.1999); *Britt v. Legal Aid Soc'y, Inc.*, 95 N.Y.2d 443, 718 N.Y.S.2d 264, 741 N.E.2d 109, 110 (2000); *Stevens v. Bispham*, 316 Or. 221, 851 P.2d 556, 566 (1993). However, some jurisdictions hold that a cause of action accrues at the time of conviction or shortly thereafter. *See, e.g., Settle v. Fluker*, 978 F.2d 1063, 1064 (8th Cir.1992) (applying Missouri law); *Duncan v. Campbell*, 123 N.M. 181, 936 P.2d 863,

868 (App.1997); *Gibson v. Trant*, 58 S.W.3d 103, 117 (Tenn.2001). Because we are guided by our decision in *Travelers*, which prohibits a defendant from collaterally attacking a criminal conviction in a subsequent civil proceeding, we do not place a great deal of weight on the analysis found in the decisions from these other jurisdictions.

**5.** Michigan does not follow the "normal rule in tort law * * * that a cause of action does not accrue until all elements of the tort exist." *Gebhardt v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900, 903 (1994). Instead, a claim accrues "on the last day of professional service without regard to when the plaintiff discovers the claim." *Id.*

We recognize that one of the fundamental precepts of statutes of limitations is to "eliminate stale claims [and] grant repose to liability that otherwise would linger on indefinitely." *Johnson v. Soo Line R.R. Co.*, 463 N.W.2d 894, 896 (Minn.1990). However, in cases like Noske's in which the "attorney's malpractice occurs during litigation, the dangers associated with delay are lessened because a record will have been made of the actions which form the substance of the later malpractice action." *Amfac Distrib. Corp. v. Miller*, 138 Ariz. 155, 673 P.2d 795, 798 (App.1983). Additionally, by precluding claims from proceeding in which a plaintiff's criminal conviction has not been overturned and will likely never be overturned, our decision comports with another fundamental policy of the statute of limitations, which is to "permit the judicial system to husband its limited resources." *Johnson*, 463 N.W.2d at 896. Therefore, in this case, the policy against allowing a defendant to collaterally attack a valid criminal conviction in a subsequent civil proceeding outweighs the policy of preventing stale claims.

Having concluded that Noske's legal malpractice claim did not accrue and the statute of limitations did not begin to run until his conviction was set aside, we must go on to address Noske's argument that Friedberg should be estopped from arguing that he was not negligent. Friedberg argues that Noske did not file a petition or cross-petition for review and therefore this argument has not been properly preserved and should not be considered. *See Anderly v. City of Minneapolis*, 552 N.W.2d 236, 239–40 (Minn. 1996). We decline to address Friedberg's procedural argument. In the interest of judicial economy, we choose to address the issue on its merits.

We have previously held that a finding of ineffective assistance of counsel does not necessarily "entail the success of a malpractice action against the defense attorney." *White v. State*, 309 Minn. 476, 481, 248 N.W.2d 281, 285 (1976). In *White*, we noted:

> Review of the issue of ineffectiveness is not to pass judgment on the abilities of a defense lawyer. Rather, the overall concern is limited to whether our adversary system of criminal justice has functioned properly. The narrow issue is not whether defense counsel was effective in the assistance rendered but rather whether defendant received the effective assistance required to assure him a fair trial and the integrity of our adversary system of justice.

*Id.* Thus, we conclude that the federal court's determination that Friedberg provided ineffective assistance of counsel is not conclusive as to Noske's legal malpractice claim and on remand Friedberg is not estopped from litigating any of the elements of Noske's legal malpractice claim.

Affirmed.