**James L. NOSKE, Appellant,**

v.

**Joseph S. FRIEDBERG, et al., Respondents.**

**No. A05–1160.**

Court of Appeals of Minnesota.

April 25, 2006.

---

868

Lawrence H. Crosby, Jay D. Olson, Crosby & Associates, St. Paul, MN, for appellant.

Paul C. Peterson, William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for respondents.

Considered and decided by WRIGHT, Presiding Judge; DIETZEN, Judge; and WORKE, Judge.

## OPINION

DIETZEN, Judge.

Appellant James Noske challenges the district court's grant of summary judgment dismissing his legal-malpractice claim, arguing that genuine issues of material fact remain for trial. By notice of review, respondents Joseph Friedberg and Joseph S. Friedberg, Chartered, argue that the district court erred by not dismissing appellant's claim for failure to submit a proper affidavit of expert review. Because we conclude that (1) appellant timely filed a proper substitute expert-review affidavit under the safe-harbor provisions of Minn.Stat. § 544.42, subd. 6(a) (2004), (2) appellant failed to establish any genuine issues of material fact, and (3) respondents are entitled to judgment as a matter of law, we affirm.

## FACTS

In July 1989, appellant resided in a house on the north side of Highway 23 near Richmond, Minnesota. Based on the large number of cars he saw coming and going, appellant suspected that neighbors who lived in a cabin south of the highway may be involved in drug dealing. Late one afternoon, appellant walked down the road and met two neighbors who lived in the cabin, including Kirk Kellerman. Appellant drank beer with them for some time, but Kellerman asked him to leave the cabin after a dispute.

Within an hour, appellant returned to his neighbors' cabin with a gun to see if there were further signs of drug dealing. Appellant and Kellerman presented different versions of what occurred next. According to Kellerman, appellant walked back a short distance, fired six shots toward Kellerman's cabin, and walked back up the road to Highway 23. Kellerman went through the woods to follow appellant and ran toward him. When Kellerman was within six or seven yards, appellant spun around and aimed the gun at Kellerman's chest. Kellerman heard three clicks, but the gun did not fire. Kellerman then started punching and kicking appellant to prevent him from firing the gun again.

According to appellant, he walked to Kellerman's cabin and brought a gun to protect himself. He looked through the window but could not see anything. As he was walking home, he believed that someone was following him. When he was north of the highway, he turned around and saw Kellerman, who yelled that appellant was a "dead man." About ten feet and ninety degrees away, appellant saw another man holding a club-like object. Both men were yelling, "Kill." He also saw a third man. At this point, appellant contends that he pointed the gun in the air and fired six shots in self-defense. He then clicked the trigger on empty chambers several times. Kellerman then started beating appellant.

As a result of this incident, the state filed a complaint charging appellant with five counts of second-degree assault with a dangerous weapon for shooting "at" five individuals, including Kellerman.

According to appellant, he hired respondent Joseph Friedberg and Joseph S. Friedberg, Chartered (collectively respondent), to defend him on a self-defense theory, and appellant continued to insist that respondent assert this theory throughout trial. Respondent did not request a self-defense instruction at trial. Instead, respondent proceeded on a theory that the state could not prove, as the complaint alleged, that appellant fired "at" his victims. The jury found appellant guilty of one count of second-degree assault against Kellerman but acquitted him of the other counts. The district court denied postconviction relief.

Appellant then appealed his conviction and the denial of postconviction relief. *Noske v. State,* No. C0-91-2486, 1992 WL 365990, at *1 (Minn.App. Dec.15, 1992), *review denied* (Minn. Jan. 28, 1993). Among other things, appellant argued that he received ineffective assistance of counsel because, despite assurances to the contrary, respondent failed to use the self-defense strategy. *Id.* at *6-7. This court rejected appellant's argument, stating that "[d]efense counsel's decision to mislead his client was unfortunate, but it [was] not grounds for reversal." *Id.* at *7.

In 1993, appellant petitioned the federal district court for a writ of habeas corpus. The federal district court ruled that respondent's assistance was constitutionally deficient because his conduct breached his duty of consultation with appellant and fell below an objective standard of reasonableness. *Noske v. Stender,* No. 4-93-518, slip op. at 22 (D.Minn. Jan. 8, 1999). Additionally, the federal district court found that the introduction of a self-defense theory to the jury had a reasonable probability of altering the outcome of the case. *Id.* Appellant had thus been "denied his Sixth Amendment right to effective assistance of counsel and was prejudiced thereby." *Id.* The federal district court granted habeas relief, vacated appellant's conviction, and authorized the state to retry appellant on the criminal-assault charge pertaining to Kellerman. *Id.* at 23. The state declined to retry appellant.

In September 2001, appellant filed a legal-malpractice action against respondent in state district court, asserting negligence, breach of contract, and misrepresentation. The district court dismissed the claim as barred by the statute of limitations. This court reversed and remanded, and the supreme court affirmed, holding that Noske's cause of action did not accrue until he was granted habeas corpus relief in 1999. *Noske v. Friedberg* 656 N.W.2d 409 (Minn.App.2003), *aff'd,* 670 N.W.2d 740 (Minn.2003).

On remand to the district court, respondent moved to dismiss on the ground that appellant's affidavit of expert review by Michael Scherschligt, a Hamline University School of Law professor, was inadequate. Respondent also moved for summary judgment on the merits. Appellant opposed the motion and, in response to the alleged deficiencies, submitted the affidavit of John Koch, an experienced criminal-defense attorney. The district court denied the motion to dismiss and allowed appellant to submit the substitute affidavit of expert review by Koch, but the district court granted summary judgment dismissing appellant's malpractice claim. Appellant filed this appeal, and respondent filed a notice of review.

## ISSUES

1. Did the district court abuse its discretion by ruling that appellant's first affidavit of expert review was deficient be-

cause the affiant was not qualified as an expert in criminal law?

2. Did the district court err by allowing appellant to submit a substitute affidavit of expert review 'under the safe-harbor provision of Minn.Stat. 544.42, subd. 6(a), to replace an affidavit by an expert who lacked the necessary qualifications?

3. Did the district court err by granting summary judgment dismissing appellant's legal-malpractice claim based on a determination that respondent was entitled to judgment as a matter of law?

## ANALYSIS

### I.

Appellant challenges the district court's ruling that it was unlikely that his expert, Michael Scherschligt, could give an admissible expert opinion regarding the conduct of a criminal-defense attorney because he had no practical or academic experience in this area. By notice of review, respondent challenges the district court's decision allowing appellant to submit an affidavit by a qualified expert on criminal law to remedy the deficiencies in the original affidavit.

■ An appellate court will "apply 'a very deferential standard' to the district court when reviewing a determination as to expert qualification, reversing only if there has been a clear abuse of discretion." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 427 (Minn.2002) (addressing expert-review affidavit required for medical-malpractice action) (citations omitted).

When bringing a malpractice action against a professional such as a lawyer, if expert testimony will be used to establish a prima facie case, the plaintiff must serve the opponent with two affidavits. Minn. Stat. § 544.42, subd. 2 (2004). The first is an affidavit of expert review and the second is an affidavit of expert identification. Minn.Stat. § 544.42, subds. 3 (affidavit of expert review), and 4 (affidavit of expert

identification) (2004). Only the affidavit of expert review is at issue in this case.

The affidavit of expert review is usually submitted with the pleadings and is generally drafted by the plaintiff's attorney. *See* Minn.Stat. § 544.42, subds. 2, 3. It must state that the facts have been reviewed by the attorney with an expert "whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial" and that, in the expert's opinion, "the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff[.]" *Id.*, subd. 3(a)(1).

■ The proposed expert must "make a substantial showing of qualification in the particular field of inquiry." *Swanson v. Chatterton*, 281 Minn. 129, 140, 160 N.W.2d 662, 669 (1968) (medical malpractice action). Preferably, experts should also have practical experience in the particular matter at issue. *See Lundgren v. Eustermann*, 370 N.W.2d 877, 880–81 (Minn.1985) (holding that when psychologist had no practical experience or knowledge of what physicians do, he was not competent to give an opinion on the standard of medical care or departure from that standard). The dispute in this case concerns Scherschligt's qualifications to give admissible expert testimony as to criminal law.

Scherschligt is a law professor at Hamline University School of Law. He teaches primarily torts and professional responsibility. The district court ruled that although Scherschligt's expertise in professional responsibility was likely relevant, it was unlikely that Scherschligt, who had no practical or academic experience in criminal law and had only academic experience on issues of professional responsibility, could provide admissible expert testimony at trial. The district court therefore concluded that the first affidavit of expert

review failed to meet the requirements of the statute.

■ Appellant argues that Scherschligt had the required qualifications, citing his expertise in attorney ethics. He contends that, rather than holding that Scherschligt was not qualified as an expert in the relevant field, the district court should have allowed the jury to determine the value of his testimony. *See Riewe v. Arnesen,* 381 N.W.2d 448, 458–59 (Minn.App.1986) (upholding district court decision that expert was qualified to testify), *review denied* (Minn. Mar. 27, 1986). Appellate courts must defer to the district court's decision on the qualifications of experts and reverse only for a clear abuse of discretion. *Teffeteller,* 645 N.W.2d at 427. The district court did not abuse its discretion by ruling that, although Scherschligt's expertise in professional responsibility was arguably relevant, his lack of practical or academic experience in the criminal-law area made it unlikely that his testimony on the duty of a criminal-defense attorney would have been admissible as expert opinion in court. The district court therefore properly dismissed appellant's first affidavit of expert review.

## II.

■ Respondent argues that the district court erred by allowing appellant to submit a substitute expert-review affidavit, claiming that the safe-harbor provision of Minn.Stat. § 544.42, subd. 6(c) (2004), applies only to inadvertent drafting errors and does not permit substitution of experts. Respondent raises a question of statutory construction, which we review de novo. *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188, 190 (Minn.1990).

■ Initially, we observe that subdivision 6(a), not 6(c), applies to an affidavit of expert review. Subdivision 6(a) provides that failure to serve an affidavit of expert review "within 60 days after demand for the affidavit results, upon motion, in man-datory dismissal." Minn.Stat. § 544.42, subd. 6(a). The affidavit requirement "cannot be met by a witness not reasonably expected to provide an admissible expert opinion at trial." *Teffeteller,* 645 N.W.2d at 426–27

■ The district court held that the "safe-harbor" provision of the statute allowed appellant to submit a proper affidavit from a qualified new expert to replace the defective affidavit and thereby satisfy the disclosure requirement of the statute. The district court ruled that the substitute affidavit by John Koch, an experienced criminal-defense attorney, met the statutory requirements.

Respondent argues that the district court erred by allowing Koch's affidavit, claiming that the safe-harbor provision is intended to apply to inadvertent drafting errors, not to a party's failure to submit an opinion by a qualified expert. The crux of respondent's argument is that subdivision 6(a) is limited to curing claimed deficiencies in an affidavit previously submitted and that the statute prohibits submission of a substitute expert-review affidavit that identifies a new expert.

For two reasons, we conclude that the "safe-harbor" provision of subdivision 6(a) does not prohibit the timely submission of a second affidavit of expert review that identifies a substitute expert witness to replace an expert disclosed under subdivision 3, after the district court has concluded that the initial affidavit is inadequate, provided that the new affidavit otherwise complies with the disclosure requirements of subdivision 3. First, subdivision 6(a) does not explicitly prohibit a party from substituting one expert with another as long as the other provisions of the statute are satisfied. Here, the other provisions of the statute were satisfied.

Second, we conclude that subdivision 4(b) provides the court with discretion to

permit a second affidavit of expert review that identifies a new expert. It states, "The parties by agreement, or the court for good cause shown, may provide for extensions of the time limits specified in subdivision 2, 3, or this subdivision. Nothing in this subdivision prevents any party from calling additional expert witnesses or substituting other expert witnesses." Minn.Stat. § 544.42, subd. 4(b). In the first sentence, the court is given the discretion to extend the time limits, inter alia, for affidavits of expert review required by subdivision 3. The second sentence provides that subdivision 4 does not prevent a party from "substituting other expert witnesses." *Id.* We read the second sentence as applying to both affidavits of expert review and expert identification. We recognize that the title of subdivision 4 is entitled "Identification of experts to be called[,]" but clear statutory language controls over titles of statutes, and here the statutory language is broader than the title. *See* Minn.Stat. § 645.49 (2004); *Johnson v. State Farm. Mut. Auto. Ins. Co.,* 574 N.W.2d 468, 471 (Minn.App.1998) (headnotes "are mere catchwords to indicate the content of the section or subdivision and are not part of the statute"). And we do not believe that the legislature intended that the right to substitute experts apply to affidavits of expert identification but not to the initial affidavit of expert review.

Respondent does not challenge Koch's qualifications as an expert or the adequacy of his expert-review affidavit. Therefore, the district court correctly concluded that the substitute affidavit was properly submitted under Minn.Stat. § 544.42, subd. 6(a).

### III.

■ Appellant argues that the district court erred by dismissing his legal-malpractice claim, contending that respondent was professionally negligent. On review of summary judgment, we determine de novo whether there are any genuine issues of material fact and whether the district court erred as a matter of law. *STAR Centers, Inc. v. Faegre Benson, L.L.P.,* 644 N.W.2d 72, 76 (Minn.2002); Minn. R. Civ. P. 56.03. We view the evidence "in the light most favorable to the party against whom summary judgment was granted." *STAR Centers,* 644 N.W.2d at 76–77. A party opposing summary judgment "may not rest upon the mere averments or denials of the adverse party's pleading but must present specific facts showing that there is a genuine issue for trial." Minn. R. Civ. P. 56.05.

■ To prevail on a legal-malpractice claim, a plaintiff must establish four elements:

(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; [and] (4) that but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action.

*Jerry's Enters., Inc. v. Larkin, Hoffman, Daly Lindgren,* 711 N.W.2d 811 (Minn. 2006) (quotation omitted). "Failure to establish proof of any one of those elements defeats the entire claim." *Noske,* 670 N.W.2d at 743.

### A. Attorney-client Relationship

The parties do not dispute that an attorney-client relationship existed. The first element of a legal-malpractice claim is therefore satisfied.

### B. Acts Constituting Negligence

■ The second element requires a showing of acts constituting negligence or breach of contract. *Id.* at 742–43. To prove negligence in a legal-malpractice case, the plaintiff must establish the stan-

dard of care and show that the attorney, through negligent acts, breached the standard of care. *Wartnick v. Moss Barnett,* 490 N.W.2d 108, 112 (Minn.1992). Expert testimony is generally required to establish both the standard of care and breach. *Hill v. Okay Constr. Co.,* 312 Minn. 324, 337, 252 N.W.2d 107, 116 (1977).

Initially, appellant argues that the determination by the federal district court in the habeas corpus proceeding satisfied the second element of this legal-malpractice claim. The habeas court concluded that counsel breached the duty to consult and intentionally misled appellant into believing that he could assert self defense at trial; that this prejudiced appellant's case; and that this conduct violated his constitutional right to effective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Appellant asserts that respondent's actions require immediate reversal. *See Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991). But the determination by the habeas court is not dispositive of appellant's civil claims and does not estop respondent from litigating any of the elements of the legal-malpractice action. *Noske,* 670 N.W.2d at 746. Thus, we turn to the merits of appellant's professional-negligence claim.

Appellant's negligence claims are set forth in the affidavit of John Koch. Appellant's first claim of negligence is that respondent breached the duty to consult by failing to assert self defense as appellant had directed. (Koch Aff. 11–12).[1] Respondent argues, and the district court agreed, that the professional-judgment rule bars appellant's claim.

The parties do not dispute that appellant discussed self defense as a trial strategy with respondent, that appellant directed respondent to assert that defense, and that respondent agreed to assert the defense. Nor do the parties dispute that respondent failed to assert the defense because respondent concluded that it was risky to do so and that the better strategy was to argue that the state could not prove, as the complaint alleged, that appellant fired "at" his victims.

But a client cannot prevail on a legal-malpractice claim based on a lawyer's failure "to pursue a particular strategy." *See Dziubak v. Mott,* 503 N.W.2d 771, 776 (Minn.1993) (addressing likelihood of success of malpractice action by indigent client against public defender). "[I]f a negligence claim involves a dispute over a choice of strategies, [the claim] should fail, since honest errors may be made which do not rise to the level of malpractice." *Id.* at 776; *cf. State v. Doppler,* 590 N.W.2d 627, 635 (Minn.1999) (holding that a decision to focus on self defense rather than intoxication as a defense was a matter of trial strategy and did not constitute ineffective assistance of counsel).[2] Under this rule, an attorney is not liable for mistakes made in the honest exercise of professional judgment. *Wartnick,* 490 N.W.2d at 113; *see Glenna v. Sullivan,* 310 Minn. 162, 170, 245 N.W.2d 869, 872–73 (1976); *accord Simko v. Blake,* 448 Mich. 648, 532 N.W.2d 842, 848 (1995) (affirming summary judgment for criminal-defense attorney, reasoning that "tactical decisions do not constitute grounds for a legal malpractice action").

---

1. Koch's affidavit also concurs with the conclusions in the affidavit of Professor Scherschligt. The Scherschligt affidavit also asserts that respondent had a duty to present self defense. (*Id.* ¶ 9).

2. In a criminal case, the lawyer must abide by the client's decisions regarding whether to plead guilty, to waive a jury trial, or to testify. Minn. R. Prof. Conduct 1.2(a). None of those decisions is at issue here.

We conclude that respondent's failure to assert self defense was a deliberate trial strategy resulting from the exercise of professional judgment. Even if respondent's decision reflected an error in judgment, it does not rise to the level of malpractice.

Appellant further argues that the American Bar Association (ABA) standards support his claim that respondent breached his duty to consult by not asserting the defense. *See* ABA Standards for Criminal Justice: Prosecution Function and Defense Function (3d ed.1993). Under these standards, defense counsel should keep their clients informed of developments and progress and comply promptly with reasonable requests for information. *Id.* § 4–3.8(a). In the event that a "disagreement on significant matters of tactics or strategy arises between defense counsel and the client, defense counsel should make a record of the circumstances, counsel's advice and reasons, and the conclusion reached." *Id.* § 4–5.2(c). But the ABA standards do not require the attorney to pursue a particular trial strategy, even if it is favored by the client. And the ABA standards are not intended to create substantive or legal rights; instead, they are to serve as a guide to attorneys on how to conduct themselves. *Id.* § 3–1.1 cmt. Consequently, failure to comply with the ABA standards does not supply a basis for a breach-of-duty claim when, as here, the challenged conduct relates to counsel's decisions about trial strategy, which are protected by the professional-judgment rule.

Appellant's second claim of negligence is that respondent breached his duty to consult by deliberately and intentionally deceiving appellant about his intent to assert self defense. (Koch Aff. ¶ 11). Koch concludes, inter alia, that respondent did not represent appellant to a "professionally adequate level" by "intentionally misleading his client." He further concludes that "there is no standard of care in Minnesota that permits a lawyer to mislead his client. I do not believe that any tactical defense includes the deliberate deception of his client."

 Respondent's alleged conduct, if true, is both serious and troubling. We do not condone such conduct. But we are limited by what appellant pleaded and argued to the district court and raised on appeal to this court. Minnesota law recognizes various legal theories of recovery related to attorney misconduct, including intentional fraud and misrepresentation, breach of contract, breach of fiduciary duty, and professional negligence.[3] *See, e.g., Jerry's Enters.*, 711 N.W.2d at 811 (breach of contract); *Rice v. Perl*, 320 N.W.2d 407, 410 (Minn.1982) (breach of fiduciary duty); *Francis v. Piper*, 597 N.W.2d 922, 924 (Minn.App.1999) (professional negligence), *review denied* (Minn. Oct. 26, 1999); *Brooks v. Doherty, Rumble & Butler*, 481 N.W.2d 120, 128–29 (Minn. App.1992) (fraud and misrepresentation), *review denied* (Minn. Apr. 29, 1992).

Although appellant initially alleged claims for breach of contract and intentional fraud and misrepresentation, he did not pursue those claims in the district court or on appeal. Those claims are, therefore, not before us. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (reviewing court must generally consider only issues that were presented to and considered by the district court in deciding the matter before it); *see also Flooring Removal, Inc. v. Ryerson*, 447 N.W.2d 429, 430 (Minn. 1989) (reviewing court may not consider issues that were not addressed by the

---

**3.** Appellant also has the right to file an ethics complaint with the Lawyers Professional Responsibility Board.

parties on appeal). Because appellant did not brief or argue separate theories of intentional fraud and misrepresentation, breach of contract, or breach of fiduciary duty, we do not decide whether appellant could survive summary judgment on any of those claims.

The only claim appellant raised on appeal is a claim for professional negligence based on respondent's breach of the duty to consult by intentionally deceiving appellant that respondent would assert self defense at trial. As to that claim, neither appellant nor his experts have alleged a negligent act that would support a claim of professional negligence. Appellant has consistently alleged that respondent engaged in intentional acts that were both fraudulent and deceptive. While we do not condone intentional misconduct, the question is whether the conduct alleged is actionable as professional negligence.

Claims of professional negligence and fraud are separate and distinct. See, e.g., Prichard Bros., Inc. v. Grady Co., 436 N.W.2d 460, 466–67 (Minn.App.1989) (reversing finding of bad faith when jury instructions commingled the concepts of negligence and bad faith, noting that bad faith is not equivalent to negligence because it requires a showing of fraudulent intent), review denied (Minn. May 2, 1989). Fraud is an intentional act that "is distinguished from negligence by the element of scienter required." Florenzano v. Olson, 387 N.W.2d 168, 173 (Minn.1986). "There is no doubt of fraudulent intent when the misrepresenter knows or believes the matter is not as he or she represents it to be." Id.

On the other hand, professional negligence requires proof of a negligent act that departs from the standard of care. Wartnick, 490 N.W.2d at 112. "The very fact that an act is characterized as negligent indicates that harm to another as the result of it was neither foreseen nor in-tended, although a reasonable man would have foreseen danger to others because of it and would have adopted another course of conduct." Hanson v. Hall, 202 Minn. 381, 385, 279 N.W. 227, 229 (Minn.1938) (emphasis added). In an action involving clients against an attorney, this court concluded that it is not inconsistent to find damages arising from intentional acts done with the purpose to deceive and that the deception was not the result of negligence. Baker v. Ploetz, 597 N.W.2d 347, 351–52 (Minn.App.1999), rev'd on other grounds, 616 N.W.2d 263 (Minn.2000). Appellant has never identified a negligent act that respondent allegedly engaged in, or conduct that negligently departed from the applicable standard of care.

Further, claims of negligence and fraud involve different defenses and measures of damages. For example, a contributory-negligence defense is a proper offset to liability for an unintentional act, but is not an adequate defense for intentional acts. See, e.g., Hanson, 202 Minn. at 385–86, 279 N.W. at 229. And the measure of damages for fraud is "out-of-pocket" losses, while negligence damages are compensatory, which is a broader measure including general and special damages, and out-of-pocket and future losses. Ray v. Miller Meester Adver., Inc., 684 N.W.2d 404, 407 (Minn.2004) (discussing compensatory damages); see B.F. Goodrich Co. v. Mesabi Tire Co., 430 N.W.2d 180, 182 (Minn. 1988) (out-of-pocket loss for fraud).

Appellant has failed to assert a negligent act consistent with his theory of professional negligence. Rather, he challenges his former attorney's professional judgment—the exercise of which is protected—and conduct that was intentional and purposeful. But appellant did not pursue theories of intentional fraud and misrepresentation in response to summary judgment, and he rested on negligence.

Consequently, appellant's claim for professional negligence fails as a matter of law.

Because we conclude that appellant failed to establish as a matter of law that respondent committed acts that constitute negligence, it is not necessary for us to reach either the third or fourth element required to establish a legal-malpractice claim, and we decline to do so.

### DECISION

The district court did not abuse its discretion by determining that appellant's first affidavit of expert review was deficient. Nor did the district court err by permitting appellant to submit a substitute affidavit to correct the deficiency or by granting summary judgment on appellant's malpractice claim on the ground that appellant failed to establish a prima facie case of professional negligence. Therefore, we affirm.

**Affirmed.**