*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2357**

State of Minnesota,
Respondent,

vs.

Mannie Lamar Banks,
Appellant.

**Filed October 20, 2014
Affirmed
Cleary, Chief Judge**

Ramsey County District Court
File No. 62-CR-13-174

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

On appeal from his conviction of violation of an order for protection (OFP), appellant argues that the district court abused its discretion by admitting testimony from a police officer regarding the police officer's past experience with domestic partners. Because the district court adequately limited the prejudicial effect and persuasive value of the testimony, we affirm.

## FACTS

On July 27, 2012, the Ramsey County District Court issued an OFP for S.H. against appellant. The OFP was valid for five years, beginning July 27, 2012. On the night of January 4, 2013, St. Paul police officers Labarre and Sullivan observed a van stopped in the middle of Selby Avenue in St. Paul. While the van was stopped, the driver was conversing with someone in another vehicle. Officer Labarre pulled the van over for obstructing traffic. With the help of St. Paul police officer Nicole Carle, Officers Labarre and Sullivan confirmed that the driver of the van was appellant and the passenger was S.H.

Officer Labarre placed appellant under arrest for suspected violation of a no contact order. On January 7, 2013, a complaint was filed with the Ramsey County District Court, charging appellant with a violation of a domestic abuse no contact order. The state later amended this charge, without objection, to a violation of an OFP.

At appellant's jury trial from July 22-24, 2013, four witnesses testified, all called by the state. Officer Carle testified as to her role in identifying the passenger of the van

2

as S.H.  Officer Labarre described pulling over the van, identifying appellant as the driver, learning of the OFP, calling for backup, identifying S.H. as the passenger, and arresting appellant.  Officer Chad Christopherson testified that he had personally served the OFP on appellant the previous summer.

St. Paul police sergeant Nikkole Peterson also testified as to her involvement with appellant's case.  Sergeant Peterson worked as an investigator in the Family Violence Unit and was assigned to investigate appellant's case.  On direct examination, Sergeant Peterson described the contents and operation of an OFP, generally, confirmed that the OFP against appellant remained in effect on January 4, 2013, and described the terms of the OFP.  During Sergeant Peterson's cross-examination, she testified that appellant had been present for part of the hearing at which the OFP was issued, that the OFP was issued outside of his presence, that S.H. had asked for the OFP to be dropped sometime after January 4, 2013, and that appellant was not present when the court eventually issued the order to drop the OFP.  Finally, on redirect examination, Sergeant Peterson testified about her experience working with domestic partners.  This appeal concerns the admissibility of the following portion of Sergeant Peterson's testimony on redirect examination:

> Q [State]: Officer, you have significant experience working with domestic relationships.
> A [Peterson]: That's correct.
> Q: In your experience is it common for domestic partners to—to get back together after—after domestic incidents?
> A: Yes, it is.
> Q: And can you describe that a little bit?
> A: It happens frequently that we will have a domestic related incident, meaning an assault, a violation of an order for protection, anything along—along those lines, terroristic threats, where one party threatens the other, and sometime

3

after the incident happens the two parties will get back together. There's been a lot of studies done as to—

[Defense]: I'm going to object to "a lot of studies," Your Honor. Without prior notice I'm not sure what the—

[State]: Your Honor,--

[Defense]: --witness is talking about.

[State]: --may we approach?

The Court: You may approach. ([W]hereupon, an off-the-record discussion was had at the bench and out of the hearing of the jury.) You may proceed.

Q [State]: Sergeant, in your personal experience can you describe what you've observed?

A [Peterson]: Absolutely. After speaking with victims of domestic violence and talking to them after they have, you know, gotten back together with their abuser, they have told me reasons why they get back together, threats of future violence—

[Defense]: Objection, Your Honor.

The Court: Sustained. Proceed.

Q [State]: Sergeant, can you—can you describe in your experience as a sergeant in this capacity the—some of the reasons why someone would want an order for protection dropped ultimately?

A [Peterson]: Um, threats of—of violence—

[Defense]: Objection, Your Honor. May we—

The Court: Approach.

[Defense]: --approach?

The Court: Yes. (Whereupon, an off-the-record discussion was had at the bench and out of the hearing of the jury.)

Q [State]: Sergeant, in your experience it's common for—or it's—it's not uncommon for victims to ask for orders to be dropped after the fact.

A [Peterson]: That's correct.

Appellant waived his right to testify at trial and the defense did not present any physical evidence or call any witnesses prior to resting. In addition, appellant stipulated to two prior convictions outside the presence of the jury. As a result of the prior convictions, the offense was charged as a felony. The jury convicted appellant of

4

violating the OFP and the district court sentenced appellant to a 26-month term of imprisonment.

## D E C I S I O N

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citations omitted). We conclude that the district court did not err in admitting the objected-to portion of Sergeant Peterson's testimony. As a result, we do not reach the question of whether the admission of the testimony prejudiced appellant.

Appellant argues that the district court abused its discretion in admitting Sergeant Peterson's expert testimony for several reasons: a) Sergeant Peterson was not qualified as an expert; b) Sergeant Peterson's testimony was irrelevant and unhelpful; c) the prejudicial effects of Sergeant Peterson's testimony substantially outweighed its relevance at trial; and d) the state did not provide appellant with notice of its intent to call Sergeant Peterson as an expert witness.

### A.    Sergeant Peterson's qualifications as an expert witness

Prior to her redirect examination, Sergeant Peterson had testified as a lay witness. However, lay witnesses may only testify in the form of opinion when those opinions are "rationally based on the perception of the witness" as to the circumstances of that case. Minn. R. Evid. 701. Because Sergeant Peterson's testimony on redirect examination was based on her experiences with previous situations involving domestic partners, rather

5

than the circumstances of appellant's case, Sergeant Peterson's redirect testimony constituted expert opinion.

Appellant argues that Sergeant Peterson's expert testimony should not have been admitted because her qualifications as an expert were not extensive enough. Because appellant did not object to Sergeant Peterson's qualifications at trial, we review any error based on Sergeant Peterson's lack of qualifications as an expert under the plain error standard. Minn. R. Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). To testify as an expert, the witness must qualify as such "by knowledge, skill, experience, training, or education." Minn. R. Evid. 702. Police officers generally may provide expert testimony "concerning subjects that fall within the ambit of their expertise in law enforcement." *State v. Carillo*, 623 N.W.2d 922, 926 (Minn. App. 2001), *review denied* (Minn. June 19, 2001). These subjects may include the topic of domestic violence. *State v. Valentine*, 787 N.W.2d 630, 639 (Minn. App. 2010). This court applies a "very deferential standard" to a district court's determination that an expert is qualified, "reversing only if there has been a clear abuse of discretion." *Noske v. Friedberg*, 713 N.W.2d 866, 871 (Minn. App. 2006), *review denied* (Minn. July 19, 2006).

Sergeant Peterson testified at trial as to her training and certifications as a police officer, as well as her experience in the Family Violence Unit as a police officer and, after her promotion to sergeant, as an investigator. This testimony provided adequate foundational evidence upon which the district court could reasonably rely in allowing her to offer expert testimony. Because Sergeant Peterson had sufficient training and

6

experience to qualify as an expert, we discern no error in admitting her opinion testimony.

**B.     Relevance and helpfulness of Sergeant Peterson's testimony**

Appellant argues that Sergeant Peterson's testimony was irrelevant to the elements of a violation of an OFP and unhelpful to the jury.  Evidence must be relevant, having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Minn. R. Evid. 401.  Evidence in the form of expert testimony is only allowed if it also "assist[s] the trier of fact to understand the evidence or to determine a fact in issue."  Minn. R. Evid. 702.

We note that, had Sergeant Peterson's testimony been offered during the state's direct examination, it would not have been relevant to any fact of consequence to the determination of whether appellant violated the OFP by contacting S.H., because it did not bear on any of the elements of that offense.  *See State v. Horning*, 535 N.W.2d 296, 298 (Minn. 1995) (excluding evidence as irrelevant where the evidence did not bear upon any of the statutorily defined elements of the crime charged).  However, defense counsel's insinuations during cross examination that S.H. might have lied to appellant opened the door to the presentation of evidence to explain S.H.'s seemingly counterintuitive behavior.

> Opening the door occurs when one party by introducing certain material creates in the opponent a right to respond with material that would otherwise have been inadmissible. The doctrine is essentially one of fairness and common sense, based on the proposition that one party should not have an

7

> unfair advantage and that the factfinder should not be presented with a misleading or distorted representation of reality.

*State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (citing *State v. Valtierra*, 718 N.W.2d 425, 436 (Minn. 2006) (other citations and quotation marks omitted).

Defense counsel's opening statement indicated that the defense would try to show that appellant did not know of the OFP because S.H. had indicated to appellant that it was no longer in effect. During Sergeant Peterson's cross examination, defense counsel asked Sergeant Peterson to confirm that S.H. moved to have the OFP dismissed soon after the date of the charged offense. Defense counsel seemingly intended this evidence to create doubt as to whether appellant knew the OFP was still in effect, by implying that S.H. was motivated to lie to appellant about the existence of the OFP. In fairness, given this evidence, the state was entitled to respond with evidence that would counter the doubts raised in Sergeant Peterson's cross examination. Evidence explaining the dynamics of domestic relationships was relevant and helpful for the purpose of offering an alternative explanation for S.H.'s seemingly counterintuitive behavior of being in the car with appellant and attempting to have the OFP dismissed. To the extent that Sergeant Peterson's expert testimony related to this limited purpose, it met the minimum requirements for relevance and helpfulness.

## C. Prejudicial effects of Sergeant Peterson's testimony

Appellant argues that Sergeant Peterson's testimony should have been excluded because its prejudicial effect outweighed its relevance and helpfulness. Under Minn. R. Evid. 403, even relevant and helpful expert testimony may be excluded if the probative

value of such testimony is substantially outweighed by the danger of unfair prejudice or misleading the jury. *State v. Grecinger*, 569 N.W.2d 189, 196 (Minn. 1997). "Unfair prejudice under rule 403 is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). The supreme court has advised courts to "proceed with great caution" before admitting expert testimony in criminal cases because of its potential to unduly influence the jury. *Grecinger*, 569 N.W.2d at 193.

Nonetheless, appellant has not demonstrated that the testimony to which he objects presented such a danger of unfair prejudice that its admission significantly outweighed its potential relevance. To the extent that Sergeant Peterson's expert testimony went beyond the very limited purpose for which it was relevant, the district court took measures that adequately limited the prejudicial impact of the objected-to testimony. It appears from the record that the district court sustained all three objections that the defense made to Sergeant Peterson's testimony. Although the district court did not explicitly state to the jury that it had sustained appellant's first and third objections to Sergeant Peterson's testimony, the state significantly changed the course of its redirect examination after the first off-the-record conference, and abandoned the contested line of questioning altogether after the second off-the-record conference. The implication of these changes is that the district court carefully considered and effectively prevented further presentation of evidence that had limited probative value in comparison to its potential prejudicial effect. The district court also instructed jurors that they were not to consider as evidence

9

any of the questions or answers in regard to which it sustained an objection. "Courts presume that juries follow the instructions they are given." *State v. Ferguson*, 581 N.W.2d 824, 835 (Minn. 1998). By truncating the presentation of Sergeant Peterson's expert testimony and instructing the jurors to disregard testimony for which an objection had been sustained, the district court acted within its discretion and prevented the state from receiving an unfair advantage from Sergeant Peterson's expert testimony.

**D.** **The state's obligation to inform appellant of its intent to call an expert witness**

Appellant argues that the district court erred by allowing Sergeant Peterson's testimony because the state did not provide appellant with notice of its intent to present her expert testimony. "Whether a discovery violation occurred is an issue of law which this court reviews de novo." *State v. Palubicki*, 700 N.W.2d 476, 489 (Minn. 2005). During pre-trial discovery, the state must disclose the names of any expert witnesses it plans to call, the subject matter of those experts' testimony, and any findings, opinions, or conclusions to which the experts will testify. Minn. R. Crim. P. 9.01 subd. 1(4)(c). The state did not provide notice to appellant that it would offer Sergeant Peterson's expert testimony regarding her experience with domestic relationships generally. However, in the context of trial, it appears that the expert testimony was offered in response to defense counsel's questions on Sergeant Peterson's cross examination. As noted above, when defense counsel questioned Sergeant Peterson regarding S.H.'s dismissal of the OFP, it opened the door to the state offering evidence that would otherwise have been inadmissible. The spontaneous nature of offering this otherwise-inadmissible evidence

10

would logically have prevented the state from providing appellant with prior notice of the expert testimony. Thus, it is not clear that a discovery violation occurred here.

Even if the state committed a discovery violation by failing to provide appellant with prior notice of the expert testimony, the district court did not necessarily commit reversible error by admitting the testimony. This court reviews a district court's choice of remedy for a discovery violation for an abuse of discretion. *State v. Colbert*, 716 N.W.2d 647, 655 (Minn. 2006). Here, when defense counsel objected initially to Sergeant Peterson's testimony on grounds of lack of prior notice, the court appears to have responded by significantly limiting the extent to which Sergeant Peterson could testify as an expert. Such a response is within the discretion of the district court in sanctioning the state for violating a discovery rule.

Appellant has not demonstrated, as to any of the four grounds above, that the district court abused its discretion. We conclude the district court did not err by admitting Sergeant Peterson's expert testimony regarding domestic partners.

**Affirmed.**

11