*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PBM PARTNERS, LLC, and MICHAEL BLUM,

        Plaintiffs-Appellants,

v

DICKINSON WRIGHT, PLLC, and JACOB S. FRENKEL,

        Defendants-Appellees.

UNPUBLISHED
June 18, 2026
9:52 AM

No. 375178
Wayne Circuit Court
LC No. 24-016623-NM

Before: YOUNG, P.J., and BORRELLO and TREBILCOCK, JJ.

PER CURIAM.

In this legal malpractice action, plaintiffs PBM Partners, LLC, and Michael Blum appeal as of right the trial court's order granting summary disposition in favor of defendants Dickinson Wright, PLLC, and Jacob Frenkel pursuant to MCR 2.116(C)(7) on the ground that plaintiffs' action was barred by the statute of limitations. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from defendants' legal representation of plaintiffs in a complex dispute concerning a commercial lease and security interests in furniture, fixtures, and equipment. Plaintiff Blum, managing partner of PBM Partners—a commercial real estate enterprise—along with PBM Partners, owned and operated the Pitt Building in downtown Pittsburgh. In 2017, Blum became a member, officer, and shareholder of Feenix Payment Systems, LLC. Plaintiffs leased commercial space to FVP Smithfield, a Feenix-affiliated entity. In February 2020, FVP Smithfield defaulted on its rent obligations, prompting PBM Partners to issue a notice of default. Shortly thereafter, Keith Lee, the founder of Feenix, terminated Blum's affiliation with Feenix, culminating in a separation agreement executed on May 7, 2020. PBM Partners initiated eviction proceedings against FVP Smithfield, resulting in a dispute over PBM Partners' asserted first-priority security interest in FVP Smithfield's assets. On November 30, 2020, another entity claiming a security interest conducted a UCC sale, at which a separate Feenix entity acquired the items for $250,000.

-1-

On December 4, 2020, plaintiffs engaged defendant Frenkel, an attorney at Dickinson Wright, for legal counsel and advocacy regarding the aforementioned matters. Frenkel subsequently dispatched a letter dated December 18, 2020, to Steven Segaloff, senior counsel for Atalaya Capital Management. Atalaya had extended financing to Feenix and FVP Smithfield, allegedly securing an interest in their assets. An Atalaya entity executed the UCC sale central to the dispute. In his correspondence, Frenkel asserted that Atalaya orchestrated a "sham" transaction intended to defraud and harass PBM Partners. Frenkel attested, and billing records corroborate, that his and Dickinson Wright's representation terminated on January 21, 2021—the final date on which legal services were provided.

On May 11, 2021, Lee and Feenix sued plaintiff Blum in the Delaware Superior Court, alleging, as relevant here, that the Frenkel letter was defamatory and constituted a breach of the separation agreement between plaintiff Blum and Feenix.

From May 14, 2021, to May 19, 2021, Frenkel exchanged a series of emails with Blum's mother, attorney Bambi Blum, about the Delaware lawsuit. Dickinson Wright's engagement letter had stated, "Additionally, Bambi Blum will be a contact in connection with this engagement, and all communications with her also are within the attorney-client privilege." In this email exchange, Blum's mother made the following relevant statements to Frenkel:

> [T]he entire complaint for defamation, slander and tortious interference is based on your letters to Ayala [sic], which they quote in entirety. The allegations are that you committed these torts at Michael's direction. It is your reputation and expertise that is on the line here and I wanted your thoughtful input.

> * * *

> Delaware counsel will be secured, but I am hoping for your input as Mike is essentially being sued for your legal services.

> * * *

> If this defamation suit is lost, they have set you up for malpractice.

Frenkel averred that his last email communication with Blum was on May 13, 2021, and that his last email communication with Blum's mother was on May 19, 2021.

Blum's attorney in the Delaware lawsuit, Lance Shinder, sent a letter via e-mail to Frenkel, dated July 16, 2021. In that letter, Shinder stated that all the claims against Blum in the Delaware lawsuit stemmed from Frenkel's December 18, 2020 letter, and Shinder asked Frenkel to provide a copy of his malpractice insurance that was in effect during the time that he represented plaintiff Blum.

In a letter dated July 23, 2021, Dickinson Wright attorney K. Scott Hamilton responded on behalf of Frenkel to Shinder's July 16 letter. Hamilton indicated that Shinder's request for copies

of malpractice insurance policies was being declined, and Hamilton asserted that there was "little, if any, ground for liability against Mr. Frenkel based on his correspondence."

Shinder subsequently sent another letter via e-mail to Hamilton, dated May 9, 2022. In this letter, Shinder explained that the judge in the Delaware action had declined to grant Blum's summary disposition motion and indicated in his ruling that he believed Frenkel's letter went beyond what was necessary in such a letter. Shinder opined that the Delaware Judge appeared likely to find in the upcoming bench trial that the letter breached the separation agreement between Blum and Feenix. Shinder closed the letter by stating, "Given the foregoing, Mr. Blum demands that Dickinson Wright assume the defense of the [Delaware] litigation, reimburse him for defense costs and fees incurred to date including those paid to Dickinson Wright, prosecute the prevailing party fee provision in Mr. Blum's Separation Agreement, and indemnify Mr. Blum for any judgment rendered against him in the case."

Hamilton responded in a letter dated May 19, 2022. In that letter, Hamilton declined Shinder's requests, noting that the request for Dickinson Wright to assume Blum's defense in the Delaware litigation at this stage was prejudicially late, that Blum and his mother had significant input in drafting the December 18, 2020 letter signed by Frenkel, that Blum approved the Frenkel letter before it was sent, that Blum never sought advice from Frenkel about whether the letter would violate any provision of the separation agreement, that Frenkel was protected by the attorney-judgment doctrine, and that it was premature under Delaware law for Blum to seek indemnification from Dickinson Wright because there had not yet been a final disposition in the Delaware action.

On December 14, 2023, Feenix filed another lawsuit in the Delaware Superior Court against Blum, with the allegations again arising out of the Frenkel letter. The Delaware Superior Court conducted a bench trial on the allegation that Blum violated the non-disparagement clause of his separation agreement with Feenix by authorizing the December 18, 2020 letter. Four additional counts from the original complaint were dismissed on summary judgment. The trial court determined that Blum breached the agreement by retaining Frenkel and approving the letter, which disparaged FVP Smithfield and Lee with unsupported accusations of fraud, sham transactions, and harassment. The court further found a breach due to disclosure of confidential information in the letter. Damages of $11,212.50 were awarded to Atalaya for costs incurred because of the letter.

The Delaware court observed that the separation agreement included a fee-shifting provision permitting the substantially prevailing party in any action relating to the agreement to recover fees and expenses, including reasonable attorney fees. However, the court declined to award fees to either party, finding that although both parties achieved partial success, neither substantially prevailed. The court issued its decision on May 29, 2024.

The second Delaware lawsuit was heard by the same judge who presided over the initial lawsuit between the parties, and the complaint was dismissed on August 19, 2024, pursuant to Blum's motion. However, Blum's request for attorney fees was denied.

-3-

On November 12, 2024, plaintiffs filed the present action in the Wayne Circuit Court, alleging legal malpractice against defendants. Plaintiffs claimed that defendants were professionally negligent by failing to conduct due diligence in reaching the legal opinions related to plaintiffs' dispute with Feenix; failing to review, understand, and avoid breaching Blum's non-disparagement and confidentiality restrictive covenants in the separation agreement, despite that Blum provided the separation agreement to defendant Frenkel; disparaging Feenix and Lee in the December 18, 2020 Frenkel letter; revealing Feenix's confidential information in the same letter; and generally failing to properly respond to the fallout from that letter. Plaintiffs sought damages representing what Blum was ordered to pay by the Delaware court, the legal fees Blum incurred in defending the claims brought against him arising out of the December 18, 2020 letter, and attorney fees and costs paid to defendant Dickinson Wright because of the Frenkel letter.

Defendants moved for summary disposition under MCR 2.116(C)(7), asserting that plaintiffs' legal malpractice action was barred by the statute of limitations. Defendants argued that plaintiffs' action was barred pursuant to MCL 600.5805(8) and MCL 600.5838(1) because defendants discontinued serving plaintiffs as legal counsel on January 21, 2021, and plaintiffs filed the present action well more than two years after that accrual date. Additionally, defendants argued that although MCL 600.5838(2) also permitted a legal malpractice claim to be commenced within two years after accrual or six months after plaintiff discovered or should have discovered the claim, whichever was later, plaintiffs certainly discovered the claim at the earliest by May 15, 2021, when Blum sent Frenkel a letter essentially stating that the lawsuit that had recently been filed against Blum was based on Frenkel's legal malpractice.

In response, plaintiffs admitted that defendants discontinued serving plaintiffs as legal counsel on January 21, 2021, but plaintiffs argued that they did not suffer injury from defendants' malpractice until May 29, 2024, when the trial court in the Delaware action issued its opinion and judgment against plaintiffs, in which it ruled that plaintiffs breached the separation agreement and could not recover attorney fees and costs under the fee-shifting provision of the separation agreement. Plaintiffs argued that the present malpractice suit was therefore timely filed within the six-month discovery period under MCL 600.5838(2). Furthermore, plaintiffs argued that defendants should be equitably estopped from raising a statute-of-limitations defense based on defendants' refusal to assume plaintiffs' defense in the Delaware action, wherein defendants stated that any claim was premature prior to the final disposition of that lawsuit.

Following a hearing, during which the parties argued consistently with their briefs, the trial court ruled that the action was barred by the statute of limitations and granted summary disposition in favor of defendants. The trial court concluded that plaintiffs were aware of all of the elements of a possible malpractice cause of action against defendants on May 11, 2021, when the Delaware litigation was initiated. This appeal followed.

## II. STANDARD OF REVIEW

The trial court's ruling on a motion for summary disposition under MCR 2.116(C)(7) is reviewed de novo. *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 386; 738 NW2d 664 (2007). Summary disposition is properly granted under MCR 2.116(C)(7) if "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . statute of limitations . . . ."

When reviewing a motion under MCR 2.116(C)(7), the contents of the complaint are accepted as true unless contradicted by supporting documentation, and this Court considers "affidavits, depositions, admissions, and other documentary evidence if the supporting materials are admissible." *Kloian v Schwartz*, 272 Mich App 232, 235; 725 NW2d 671 (2006). If the facts are undisputed, this Court reviews "de novo whether a cause of action is barred by the applicable statute of limitations." *Trentadue*, 479 Mich at 386.

## III. ANALYSIS

On appeal, plaintiffs contend that the trial court erred in dismissing this matter because, pursuant to MCL 600.5838(2), they commenced the action within six months of the Delaware trial court's judgment. Plaintiffs maintain that this judgment constituted the earliest date on which they could have reasonably discovered the alleged malpractice.

The statutes defining the relevant limitations periods for the present action are MCL 600.5805 and MCL 600.5838. First, MCL 600.5805 provides in relevant part:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.
>
> * * *
>
> (8) Except as otherwise provided in this chapter, the period of limitations is 2 years for an action charging malpractice.

Furthermore, regarding malpractice specifically, MCL 600.5838 provides in relevant part:

> (1) . . . a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.
>
> (2) . . . an action involving a claim based on malpractice may be commenced at any time within the applicable period prescribed in section[] 5805 . . . or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. The plaintiff has the burden of proving that the plaintiff neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim. A malpractice action that is not commenced within the time prescribed by this subsection is barred.

Our Supreme Court interpreted MCL 600.5805 and MCL 600.5838 in the context of a legal malpractice claim in *Gebhardt v O'Rourke*, 444 Mich 535; 510 NW2d 900 (1994). As our Supreme Court explained:

Section 5805 is the general limitation provision, delineating periods for different types of actions. It states that a plaintiff must bring a malpractice action within two years of when the claim first accrues, or it will be time-barred. Section 5838 is specific to malpractice actions. The first subsection provides that accrual occurs on the last day of professional service, regardless of when the plaintiff discovers or otherwise has knowledge of the claim. The second subsection allows additional time to file by providing that a plaintiff can file within six months of when he discovered, or should have discovered his claim. [*Id*. at 541.]

In *Gebhardt*, the Court concluded that the statutory language in §§ 5805 and 5838 was unambiguous and must be enforced as written because "where the language used is clear, then the Legislature must have intended the meaning it has plainly expressed." *Id*. at 541-542. The Supreme Court explained that although the "normal rule in tort law is that a cause of action does not accrue until all elements of the tort exist[,] [s]ection 5838 expressly rejects this rule by providing that accrual occurs without regard to whether the client's malpractice claim is ripe." *Id*. at 542.

Thus, the *Gebhardt* Court held that "[a]ccrual of a malpractice action, for purposes of the two-year limitation period, occurs on the last day of professional service," explaining that the "Legislature intended that the last day of service be the sole basis for determination of accrual" and that "[l]ack of ripeness, i.e., that not all the elements of the tort have been discovered, is irrelevant to the two-year limitation period." *Id*. at 543-544.

With respect to the six-month discovery rule in Subsection 2, the Court stated that a plaintiff does not need to know of a "likely" cause of action but "need only discover that he has a 'possible' cause of action." *Id*. at 544. The Court stated that the elements of a legal malpractice claim were "(1) the existence of an attorney-client relationship, (2) the acts constituting the negligence, (3) that the negligence was the proximate cause of the injury, and (4) the fact and extent of the injury alleged," and the Court acknowledged that the last two elements were "generally more problematic to analyze under the discovery rule." *Id*. at 544-545. Nonetheless, the Court expressly held that "harm is established not by the finality of the damages, but by the occurrence of identifiable and appreciable loss" and that "[o]nce an injury and its possible cause is known, the plaintiff is aware of a possible cause of action." *Id*. at 545.

The factual circumstances in *Gebhardt* involved the plaintiff's legal malpractice suit against the defendant, who had been the plaintiff's attorney in a criminal matter. *Id*. at 537. The plaintiff was convicted of aiding and abetting a criminal sexual assault. *Id*. After her conviction, she dismissed the defendant as her attorney and hired a new attorney. *Id*. at 538. The defendant last represented the plaintiff at her sentencing hearing. *Id*. Less than two months later, the plaintiff's new attorney filed a motion for a new trial, alleging that the defendant had committed a host of errors and generally failed to provide the plaintiff with a substantial defense. *Id*. The trial judge set aside the plaintiff's conviction on the ground of insufficient evidence, and that ruling eventually became final after the prosecutor's attempts to obtain appellate relief were denied. *Id*. The plaintiff subsequently initiated the malpractice lawsuit against the defendant, and the trial court granted the defendant's motion for summary disposition based on the statute of limitations. *Id*. at 539.

Our Supreme Court first concluded that the plaintiff's malpractice suit was barred under the two-year limitation provision because she filed the action more than two years after defendant's last day of professional service to the plaintiff at the sentencing hearing. *Id*. at 541, 544. Next, the Court concluded that the plaintiff's action was barred under the six-month discovery rule because she also filed the lawsuit more than six months after her new attorney had filed the motion for a new trial, which was the latest time at which she should have discovered her malpractice claim. *Id*. The Court reasoned that the plaintiff knew that she had a possible malpractice claim against the defendant when she moved for a new trial and could have at that time alleged all four elements of a malpractice claim: (1) attorney-client relationship; (2) negligence; (3) proximate cause; and (4) the fact and extent of injury. *Id*. at 544.

The *Gebhardt* Court reasoned that the plaintiff clearly could have alleged the first element at the time of her new trial motion because the defendant was the attorney of record at the plaintiff's trial. *Id*. at 544-545. It was equally clear that the plaintiff could have also alleged the second element because her motion for a new trial contained her allegations of the defendant's deficient representation that denied her a substantial defense at trial and also constituted the alleged professional negligence. *Id*. The Court next acknowledged that the "last two elements are generally more problematic to analyze under the discovery rule" because "[o]ne could argue that damages and causation were uncertain until the plaintiff obtained a final judgment of acquittal." *Id*. at 545. However, because harm is established "by the occurrence of identifiable and appreciable loss," rather than "the finality of the damages," the Court held that the plaintiff discovered her malpractice claim no later than the date she moved for a new trial and made it clear in her motion that she knew that the defendant's failure to provide a substantial defense was the possible cause of her harm. *Id*. The plaintiff filed her action approximately 32 months after that date, and her action was therefore barred under the six-month discovery provision as well. *Id*. at 545-546.

Plaintiffs acknowledged that defendants stopped representing them on January 21, 2021. Plaintiffs knew of possible legal malpractice by May 2021, when they were named as defendants in the Delaware case based on the Frenkel letter. Plaintiffs, or their representative, had communicated with Frenkel, expressly conveying their position that the Delaware action was based solely upon statements made during his representation. The record demonstrates the existence of an attorney-client relationship, plaintiffs' belief that Frenkel was negligent in his drafting of the December 18, 2020, letter, and their conviction that such negligence proximately caused the harm suffered through the necessity of defending the Delaware action. Plaintiffs initiated this action on November 12, 2024—well more than six months from the time they knew, or reasonably should have known, of the potential claim in May 2021. Even if the May 2022 e-mail correspondence with defendants, which articulated more specific allegations of malpractice, were viewed as the triggering event for the six-month period, the present action remains untimely. Accordingly, under the six-month discovery rule, plaintiffs' claims are barred. *Id*.

Plaintiffs' contention that they were required to await a final judgment in the Delaware litigation before commencing their malpractice claim is unavailing. Michigan law is clear that harm for purposes of accrual is established not by the finality of damages, but by the occurrence

of an identifiable and appreciable loss. *Id*. at 545.[1] Subsequent damages do not give rise to a new cause of action. *Moll v Abbott Laboratories*, 444 Mich 1, 18; 506 NW2d 816 (1993).

Next, plaintiffs contend that defendants should be equitably estopped from relying on the statute of limitations to bar plaintiffs' action.

Equitable estoppel, as a judicially created exception to statutes of limitation, functions as a doctrine of waiver that may preclude a defendant from invoking the statute as a bar to suit. Its purpose is to prevent outcomes contrary to principles of good conscience and fair dealing. To warrant application of equitable estoppel in this context, a party must demonstrate the existence of a false representation or concealment of a material fact, made with the expectation that the opposing party will rely on such conduct, and with knowledge of the true facts on the part of the party making the representation or concealment. *Lothian v City of Detroit*, 414 Mich 160, 176-177; 324 NW2d 9 (1982).

Plaintiffs assert that equitable estoppel is appropriate because, when they requested that defendants assume their defense in the Delaware litigation and provide indemnification for any losses arising from the Frenkel letter, defendants declined, asserting both that Frenkel had not engaged in any wrongdoing and that any claim was premature prior to a final disposition in the Delaware matter. Defendants' May 19, 2022, correspondence stated, in pertinent part:

> Lastly, in addition to the absence of any substantive ground upon which Mr. Blum could claim indemnification from Dickinson Wright, I would note that under Delaware law it is premature to even consider it at the present time. *See Connelly v. State Farm Ins.*, 135 A.3d 1271, 1280 n. 36 (Del.2016)("[i]t in generally premature to consider indemnification prior to the final disposition of the underlying action"); *Hoff v. Longview Energy Co.*, 2013 WL 4084077, at *2 (Del. Ch. Aug. 12 2013) ("[u]nder settled principles of Delaware law, indemnification claims do not, typically ripen until after the merits of an action have been decided and all appeals have been resolved"); *Scherf v. Edgcomb Corp*, 864 A.2d 909, 920 (Del. 2004).

Plaintiffs, however, fail to articulate how defendants' statements concerning Delaware indemnification procedures bear upon the Michigan statute of limitations applicable to legal malpractice claims. The Michigan Supreme Court has identified the types of conduct that may give rise to estoppel in the statute of limitations context: offers to compromise or settle a plaintiff's

---

[1] We note that our Supreme Court has explained the procedure for dealing with a situation such as the one plaintiffs faced in this matter and how to pursue a remedy: the victim of the alleged malpractice must timely file the legal malpractice claim "within six months of discovering the existence of the claim, or within two years of his attorney's last day of service in the matter in which the alleged negligence occurred" and then, if necessary, seek a stay in the malpractice action until the other matter is resolved. *Gebhardt*, 444 Mich at 551.

claim, misrepresentations regarding the applicable limitations period, or partial payment of a claim. *Id*. at 178. The Court has been circumspect in recognizing estoppel absent conduct clearly calculated to induce a plaintiff's forbearance from timely filing. *Id*. at 177. Defendants' communications did not constitute an offer to settle, nor did they address the Michigan limitations period. Plaintiffs have therefore failed to establish that defendants made any false representation or concealed material facts with the intent and knowledge necessary to invoke equitable estoppel. *Id*. Consequently, invocation of the doctrine is not warranted on this record.

Affirmed. Defendants having prevailed in full are entitled to costs. MCR 7.219(A).


/s/ Adrienne N. Young
/s/ Stephen L. Borrello
/s/ Christopher M. Trebilcock